## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RYAN J. FISHMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-11058** |
| | ) | |
| **BERKSHIRE LIFE** | ) | **Judge Mark A. Goldsmith** |
| **INSURANCE COMPANY OF** | ) | |
| **AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

Defendant, Berkshire Life Insurance Company ("Berkshire"), by their attorneys, Elizabeth G. Doolin and Ryan H. Voss of Chittenden, Murday & Novotny LLC, hereby moves for summary judgment in favor of Berkshire and against Plaintiff as it relates to the sole count of alleged in Plaintiff's First Amended Complaint [ECF No. 4]; and in favor of Berkshire and as it relates to the Affirmative Defenses, and Counts I and II of Berkshire's Counterclaim for Rescission and Declaratory Judgement [ECF No. 15] as there is no genuine dispute as to any material fact and that Berkshire is entitled to Judgment as a matter of law. In support of its motion, Berkshire relies on the facts and law set forth in its accompanying brief in support.

<u>Local Rule 7.1 (a) Certification of Counsel</u>

The undersigned counsel certifies that, on October 24, 2023, counsel personally spoke to and met with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in relief, opposing counsel expressly denied concurrence.

Dated: December 7, 2023         Respectfully Submitted,

CHITTENDEN, MURDAY & NOVOTNY LLC

/s/ Ryan H. Voss
One of its Attorneys
Elizabeth G. Doolin (IL#6210358)
Ryan H. Voss (IL#6304211)
Chittenden, Murday & Novotny LLC
303 W. Madison Street, Suite 2400
Chicago, Illinois  60606
(312) 281-3600 (tel)
(312) 281-3678 (fax)
edoolin@cmn-law.com
rvoss@cmn-law.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RYAN J. FISHMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-11058** |
| | ) | |
| **BERKSHIRE LIFE** | ) | **Judge Mark A. Goldsmith** |
| **INSURANCE COMPANY OF** | ) | |
| **AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**BRIEF IN SUPPORT OF BERKSHIRE LIFE INSURANCE COMPANY OF**
**<u>AMERICA'S MOTION FOR SUMMARY JUDGMENT</u>**

Dated: December 7, 2023

Respectfully Submitted,

CHITTENDEN, MURDAY & NOVOTNY
LLC

<u>/s/ Ryan H. Voss</u>
One of its Attorneys
Ryan H. Voss (IL#6304211)
Elizabeth G. Doolin (IL#6210358)
Chittenden, Murday & Novotny LLC
303 W. Madison Street, Suite 2400
Chicago, Illinois  60606
(312) 281-3600 (tel)
(312) 281-3678 (fax)
rvoss@cmn-law.com
edoolin@cmn-law.com

## <u>TABLE OF CONTENTS</u>

STATEMENTS OF ISSUES PRESENTED …………………..…………… iii.

CONTROLLING AUTHORITY …………………………...………………..… iv

INTRODUCTION ................................................................................. 1

I.     STATEMENT OF MATERIAL FACTS …………………………......….. 2

II.    STANDARD OF REVIEW ………………………………………….… 19

III.   ARGUMENT …………………………..………………………… 20

    A.  *The Uncontroverted Material Facts Establish That Fishman's Misrepresentations Regarding his Arrest and Indictment Were Material and Entitled Berkshire to Rescind The Policy* ……………………………... 20

    B.  *The Uncontroverted Material Facts also Establish That Fishman's Misrepresentations About His Medical History Were Material and Entitled Berkshire to Rescind The Policy* ………………………………………….. 26

    C. *The Uncontroverted Material Facts also Establish That Plaintiff's Claim for Fails for Lack of Any Material Fact Establishing He is Entitled to Benefits Under the Policy* ……………………………………………………. 31

IV.    CONCLUSION ………………………………………………..……….. 33

LOCAL RULE CERTIFICATION …………………………………...…….. 33

CERTIFICATE OF SERVICE …………………………………………….... 35

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.    Did Berkshire Life Insurance Company of America properly rescind the Disability Income Policy issued to the Plaintiff Ryan Fishman after it discovered that he made material misrepresentations and/or failed to disclose or concealed facts regarding his April 6, 2021 arrest on multiple felony charges and his conditional release of April 6, 2021 restricting his ability to practice as an attorney when he completed the application for insurance that was the basis on which the Berkshire Life Insurance company of America Policy was issued?

2.    Did Berkshire Life Insurance Company of America properly rescind the Disability Income Policy issued to the Plaintiff Ryan Fishman after it discovered that he made material misrepresentations and/or failed to disclose or concealed facts regarding his chiropractic treatment and spinal conditions when he completed the application for insurance that was the basis on which the Berkshire Life Insurance company of America Policy was issued?

3.    In addition to the common law doctrine of rescission, is Plaintiff Ryan Fishman eligible for benefits under the terms and conditions of the Policy, including exclusions?

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

**Cases**

*Oade v. Jackson Nat. Life Ins. Co. of Michigan*, 465 Mich. 244, 632 N.W.2d 126 (2001)

*Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 160, 534 N.W.2d 502 (1995)

*Montgomery v. Fid. & Guar. Life Ins. Co.*, 269 Mich. App. 126, 713 N.W.2d 801 (2005)

*Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327, 331, 586 N.W.2d 113, 115 (1998)

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)

**Statutes**

MICH. COMP. LAWS § 500.2218

**Rules**

FED. R. CIV. P. 56

## **INTRODUCTION**

Three days before Plaintiff accepted delivery of a disability income insurance policy (Policy No. Z4600540, hereinafter the "Policy") approved by Berkshire, and three days before he signed attestations as to the truth of his answers to various questions in his application for the Policy, Plaintiff was arrested, taken into custody, and charged with multiple felony counts for criminal conspiracy, forgery, and obstruction of justice. These charges all arose out of his work as an attorney with the Fishman Group PC, a law firm for which Plaintiff was the managing partner. On the day of his arrest, April 6, 2021, Genesee County authorities seized Plaintiff's cell phone and computer, as well as computers and records from the Fishman Group, and the Fishman Group's accounts and assets were subject to criminal forfeiture. Plaintiff was in custody for at least three to four hours before his pretrial release on bond, the terms of which forbade him leaving the State of Michigan without permission from the court and forbade him from acting as a process server or from filing proofs of service in any court, among other restrictions.

But on April 9, 2021, when Plaintiff took delivery of the Policy, he disclosed none of these facts, which were directly responsive to multiple questions asked of him on the Application for the Policy, including express questions asked at the time of delivery. To the contrary, Plaintiff signed an Amendment to the Application and Declaration of Insurability on April 9, 2021, and attested that nothing had changed

1

from the time he signed various portions of the application in October and November of 2020, and further denied that there had been any change at all to his occupation, job title, duties, employment, or income. Plaintiff also failed to disclose significant medical treatment with his long-time chiropractor, despite multiple opportunities to disclose that treatment to Berkshire in response to explicit questions on the Application.

Plaintiff relies on a strained-to-breaking interpretation of the pertinent Application questions to insist that he answered those questions truthfully. But the facts and the law say otherwise. So, while Plaintiff claims that he is entitled to disability benefits under the Policy, the contract never went into force and effect. Berkshire properly rescinded the Policy on December 17, 2021, due to Plaintiff's multiple material misrepresentations. The uncontroverted facts also demonstrate that Plaintiff cannot prevail on his breach of contract claim against Berkshire. For all of these reasons, this Court should enter summary judgment in favor of Berkshire and against Plaintiff on all counts of Plaintiff's Complaint and Berkshire's Counterclaim.

## I.    STATEMENT OF MATERIAL FACTS

1.    This matter concerns Disability Income Policy Number Z4600540, issued by Defendant/Counter-Plaintiff, Berkshire Life Insurance Company of America ("Berkshire"), to the Plaintiff/Counter-Defendant, Ryan Fishman

("Fishman") hereafter referred to as the "Policy."[1] (ECF No. 4-1, Ari Fischman Dep. 8:13-9:4,  Exhibit A, BL 000001-BL 000059; Affidavit of Dennis Kelly ¶¶ 3-4, Exhibit A).

## FISHMAN'S APPLICATION FOR THE POLICY

2.      Fishman was referred to independent insurance agent, Ari Fischman, for the purpose of acquiring both life and disability insurance. (Fischman, Ari, Dep. 6:8-6:14, 49:11-49:18).

3.      On October 26, 2020, Fishman electronically signed an Application for Individual Disability Insurance Part I ("Application Part 1") in an effort to acquire the Policy. (ECF No. 18, Fishman's Answer and Affirmative Defenses to Counterclaim, ¶ 5, PageID.299; Fishman, Ryan Dep. 56:3-56:17; See Kelly Exhibit A, BL 00033-BL 00041).

4.      Fishman read the through Application Part 1 before he effectuated his e-signature on Application Part 1. (Fishman, Ryan Dep. 58:12-59:22; See Kelly Exhibit A, BL 000041, ¶ 2).

5.      Application Part I contains these questions, among others, with responses as follows:

### SECTION 3: OCCUPATIONAL INFORMATION
A.      Occupation : Attorney

***

---

[1] To the extent Berkshire refers to the "Policy," it does so without waiving the fact that Policy No. Z4600540 has been rescinded and is void *ab initio* due to the material misrepresentations described and alleged herein.

3

C.     How many hours per week are you at work in this occupation? 40

***

I.     Are you presently employed, and have you been continuously at work full-time (at least 30 hours per week) performing the usual duties of your occupation for the Past 180 days? …..…………………………..………………… ⊠ Yes ☐ No
If no, explain in Remarks & Special Requests Section 9.

***

L.     Do you plan to change your occupation, occupational duties, or employment within the next six months? .☐ Yes ⊠ No
If Yes, provide details:

***

**SECTION 6: ADDITIONAL INFORMATION**
***

E.     Do any of the following apply? 1 Your professional or occupational license or certification has ever been suspended, revoked, restricted, inactivated, surrendered, or the like; 2 There is a pending investigation or complaint concerning you with a regulatory, governmental, or other entity that oversees your professions; 3 You have ever been disbarred; or 4 You have ever been fined or sanctioned by an entity that oversees your profession. …………………………………………… ☐ Yes ⊠ No

(See Kelly Exhibit A, BL 000035-BL 000040).

6.     In e-signing Application Part 1 Fishman represented as follows:

**SECTION 11: REPRESENTATIONS OF THE PROPOSED INSURED AND OWNER**

Those parties who sign below, agree that:

1. This Application for Disability Insurance: Part I, Application for Insurance: Part II – Health and Medical History, any required Representations to the Medical Examiner, and any other supplements or amendments to this Application for Disability Insurance: Part 1 will form the basis for, and become part of and attached to any policy or coverage issued and is herein referred to as the "Application."

2. The Proposed Insured has read the application and all statements and answers as they pertain to the Proposed Insured, and all of the statements that are part of this Application are correctly recorded, and are complete and true to the best of the knowledge and belief of those persons who made them.

3. No agent, broker or medical examiner has any right to accept risks, make or change contracts, or to waive or modify any of the Company's rights or requirements.

4. Any misrepresentation or omission, if found to be material, may adversely affect acceptance of the risk, claims payment, or may lead to rescission of any policy that is issued based on this Application.

5. All coverage you have identified to be replaced in answer to Question 4C of this Application will be permanently terminated on or before the date(s) indicated. If not, it is understood and agreed that the Company reserves all rights provided in any policy issued and those available by law. Further, benefits under any policy or coverage issued based on this Application may be reduced by any monthly indemnity or benefit under such existing policies.

6. The policy date is the date from which premiums are calculated and become due. Except as provided in the Conditional Receipt (if an advance payment has been made and acknowledged and such Receipt issued , no insurance shall take effect unless and until the policy is delivered, the first premium is paid, and there has been no change in the health, the income level, status of employment or occupation of the proposed insured. If disability insurance becomes effective in the manner stated in the Conditional Receipt, the amount of such insurance shall not exceed the limits set forth in such Receipt. If a request is made for coverage to commence as of a specified date, it is understood and agreed that certain rights under the conditional receipt may be waived.

7. Changes or corrections made by the Company and noted in the "Amendments or Corrections" section are ratified by the owner upon acceptance of a policy containing this Application with the noted changes or corrections. Any change in plan of insurance, amount, age at issue, gender, class or benefits shall require the written consent of the owner and the Proposed Insured.

8. By paying premiums on a basis more frequently than annually, the total premium payable during one year's time will be greater than if the premium were paid annually. That is, the cost of paying annualized periodic premiums will be more than the cost of paying one annual premium.

9. If applying for Disability Buy-Out insurance, if no written buy-sell agreement is in place, one must be executed before a disability occurs that would qualify for benefits under the policy. Otherwise, the Company will have no liability other than to refund premiums. We will require written assurance within one year of the policy date that a written buy-sell agreement is in place. If no written assurance is received, the policy will be voided and the premiums refunded.

**Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.**

| Signed at City, State | | Today's Date (mm/dd/yyyy) |
|---|---|---|
| Bloomfield Hills | MI | 10/26/2020 |

(Fishman, Ryan Dep. 59:13-59:16; See Kelly Exhibit A, BL 000041).

7.      Fishman also reviewed the information contained in the Supplement to Application for Insurance, verifying it was true, and e-signed said Supplement to Application for Insurance on October 26, 2020. (Fishman, Ryan Dep. 59:23-61:9; See Kelly Exhibit A, BL 000042).

8.      As part of the Application process for the Policy, Fishman provided the information appearing in the Medical Supplement for Individual Life and Disability Insurance – Part II and Supplement to Application for Insurance (collectively "Medical Supplement"). Fishman electronically signed the Medical Supplement on November 2, 2020. (ECF No. 18, Fishman's Answer and Affirmative Defenses to Counterclaim, ¶ 9, PageID.301).

5

9.      The Medical Supplement contained the following question which was

reflected in the signed Medical Supplement as follows:

> C4.    In the past 10 years, have you been diagnosed with, treated for, tested positive for, been given medical advice by a member of the medical profession or received a consultation or counselling for:
>
> ***
>
> h.      any disease, or condition of the back, neck, spine/spinal cord, joints, limbs, or bones.
> ☐ Yes ☒ No

(See Kelly Exhibit A, BL 000048).

10.     Fishman reviewed the information set forth in C4.h., including the "no"

response before e-signing  directly below the following language:

> I understand and agree that the statements and answer in this application: (1) are written as made by me; (2) to the best of my knowledge and belief are full, complete and true; and (30 shall be part of the contract of insurance, if issued.
>
> **Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.**

(See Kelly Exhibit A, BL 000051; Fishman, Ryan Dep. 72:17-72:19; 74:4-74:10).

11.     Section E of the Medical supplement states:

> **SECTION E: Additional Details**
> **Provide all details to any "Yes" answers, identifying each detail by question number.**
>
> ***
>
> See Supplemental.

(See Kelly Exhibit A, BL 000051).

6

12.     During the application process, Berkshire requested follow-up medical information including height, weight and a blood test, but no medical examination was required of Fishman. (Rugg, Karen Dep. 46:5-46:14: 52:2-53:5).

13.     A third-party vendor, Exam One, obtained height, weight, and blood test from Fishman. (Rugg, Karen Dep. 46:15- 47:3).

14.     Due to COVID, Fishman deferred his meeting with ExamOne until 2021. (Fischman, Ari, 48:12-49:10).

15.     Fishman met with Dr. Robert Skalski of ExamOne on March 17, 2021 so that he could examine Fishman on behalf of Principal Life Insurance Company. AT the same time, Exam One collected height, weight, and a blood sample from Fishman on behalf of Berkshire, listed on a separate form. (Fishman, Ryan Dep 99:25-104:17).

16.     Fishman had not completed the process of applying for the Policy when, on April 6, 2021, he was arrested at his home and certain of his computers were confiscated by law enforcement. (Fishman, Ryan Dep. 105:11-105:25).

17.     On April 6, 2021, Fishman was charged in Genesee County, Michigan, with 32 felony crimes including forgery, obstruction of justice, and criminal enterprise. It is alleged by the State of Michigan Fishman engaged in a criminal enterprise to forger proofs of service and affidavits of service of summons of complaints for his own financial gain.  (See Fishman, Ryan Dep. 110:9-112:8,

Fishman Q (marked as Genesee County 0001-0014); See also Affidavit of Dennis Kelly ¶¶ 8-9, Exhibit C, BL 00159-BL 001610).

18.    As a condition of release on April 6, 2021, Fishman signed a bond providing he could not work as a process server and could not file any proofs of service with the court. (See Fishman, Ryan Dep. 113:9-114:1, Fishman Q; See also Affidavit of Dennis Kelly ¶¶ 10-11, Exhibit D, BL 001611).

19.    On April 9, 2021, Fishman completed and electronically signed an Amendment to Application for the Policy, in which he amended and supplemented certain information he had previously provided in the applying for the Policy. (ECF No. 18, Fishman's Answer and Affirmative Defenses to Counterclaim, ¶ 13, PageID.302; Kelly Exhibit A, BL 000031-BL 000032; Fishman, Ryan Dep. 90:24-92:9).

20.    The Amendment to Application amended the response to Question No. C4.H from the Medical Supplement from "No" to "Yes." The Amendment to Application further amended the response to Question No. E as follows:

> Details to Question No. C.4.h should read: "In 4/2017 I tweaked my left knee and strained my thigh, I saw Dr. Lederman. I was advised to treat with ice and biofreeze as well as cold laser therapy which I didn't do. My x-ray and ultrasound were completely normal. My symptoms completed resolved without residuals or recurrence since 4/2017."

(See Kelly Exhibit A, BL 000031-BL 000032).

8

21.    The Amendment to Application for the Policy contains the following

agreements:

> It is agreed that these amendments and declarations are to be taken and
> considered a part of said application and subject to the representations
> and agreements therein, and that the said application and these
> amendments are to be taken as a whole and considered as the basis, and
> form part of the contract or policy issued thereon.
>
> It is further represented that the statements and answers in said
> application were complete and true when made and that no changes
> have occurred which would make said statements and answers incorrect
> or incomplete as of the present date.
>
> The undersigned declare that a duplicate copy of the foregoing
> amendment to application is attached to the policy.

(ECF No. 18, Fishman's Answer and Affirmative Defenses to Counterclaim, ¶ 14,

PageID.303; Kelly Exhibit A, BL 000031-BL 000032; Fishman, Ryan Dep. 90:24-

92:9).

22.    On April 9, 2023, Fishman electronically signed the Declaration of

Insurability for the understanding it would induce Berkshire to deliver the Policy to

himself as the Owner and insured. (Fishman, Ryan Dep. 93:13-94:20; Kelly Exhibit

A, BL 000059).

23.    The Declaration of Insurability, which Fishman signed, states:

> For the policy identified above [Z4600540], I represent that since the
> date of the earlier of the Application for Insurance: Part II – Health and
> Medical History, the Representations to the Medical Examiner Part 2,
> or the Application for Disability Insurance: Part I to Berkshire Life
> Insurance Company of America (the "Application") I have not:

9

1.  had a physical exam or checkup of any kind;
2.  been diagnosed, treated, or tested positive by a member of the medical profession, counselor, or professional of the healing arts for any disease, illness, or injury;
3.  received medical advice or counseling from any physician, medical or mental health professional, counselor, psychotherapist, chiropractor or other practitioner;
4.  been a patient in a hospital, clinic, or other medical or mental health facility;
5.  had any changes in occupation, job title, job duties, employment, income, residence, military status, or tobacco or nicotine use;
6.  applied nor am I eligible for other life, disability or accident insurance;
7.  had a professional license suspended or revoked, nor have I been notified of any pending investigation or complaint concerning my professional licenses; or
8.  filed for bankruptcy nor has any business I own or have owned filed for bankruptcy.

In addition to the above representation, I further represent that: 1 as of today's date, I am actively at work on a full time basis at least 30 hours per week performing the same duties and occupation(s) identified in the Application for Disability Insurance: Part 1; and 2 there are no exceptions to the above representations as set forth below. [No exceptions indicated].

**This Declaration of Insurability does not require disclosure of medical, financial, or occupational facts already provided by me, or about me, and which are stated in an amendment, or other form(s) attached to the policy or policies to delivered to me. It is agreed that this Declaration: (1) shall be made part of the Application for the policy identified above; and (2) is made to induce Berkshire Life Insurance Company of America to deliver said policy to the owner.**

(Kelly Exhibit A, BL 000059).

24.   Based on the information contained in all components of the

Application described above, and in reliance on it, Berkshire issued the Policy to

10

Fishman with a Policy Date of April 24, 2021. All components of the Application, including the Application for Individual Disability Insurance Part I, Individual Disability Insurance Supplement for a Disability Income Policy, Medical Supplement for Individual Life and Disability Issuance - Part 11, Supplement to Application for Insurance for the Disability Income Policy, Amendment to Application, and Declaration of Insurability, were attached to and made part of the Policy. (Fishman, Ryan Dep. 93:13-94:20; Kelly Exhibit A., BL 000001-BL 000059).

## FISHMAN'S CLAIM FOR DISABILITY

25.    On April 30, 2021, Fishman began seeing psychologist, Dr. Michael Abramsky, for symptoms of anxiety and adjustment disorder caused by his criminal indictment. (Abramsky, Michael Dep. 11:3-12:7; 20:2-20:6).

26.    Dr. Abramsky determined Fishman suffered from no preexisting psychiatric or personality vulnerabilities or conditions prior to his indictment. (Abramsky, Michael Dep. 12:8-13:22).

27.    Dr. Abramsky diagnosed Fishman with "adjustment disorder with anxiety." (Abramsky, Michael Dep. 13:2-13:5).

28.    On July 29, 2021, Fishman signed a claim form submitted to Guardian and, for the purpose of making disability claim under the policy, he listed his disabling condition as "Depression and Anxiety" and wrote the first instance of

11

symptoms was April 15, 2021. His sole treating physician for his allegedly disabling condition was Dr. Michael Abramsky. (Fishman, Ryan Dep. 128:4-128:25, Exhibit V, BL 000823-BL 000829; Affidavit of Dennis Kelly ¶¶ 5-6, Exhibit B).

## BERKSHIRE'S CLAIM AND POLICY INVESTIGATION

29.     Fishman's submission of his disability claim instigated an investigation of his claim and the Policy by Berkshire. (Kelly, Dennis Dep. 58:18-58:25; ECF No. 18, Fishman's Answer and Affirmative Defenses to Counterclaim, ¶ 22, PageID.306; Affidavit of Dennis Kelly ¶7).

30.     Through its investigation, Berkshire discovered that Fishman was arrested on April 6, 2021 and charged with forgery and maintaining a criminal enterprise and was on April 6, 2021, subject to the bond conditions referenced in paragraph 13 *supra*. (See Fishman, Ryan Dep. 208:6-209:2; Exhibit RR to Deposition of Ryan Fishman, BL 001928-BL 001938; Affidavit of Dennis Kelly ¶¶ 8-11, Exhibits C, BL 001595-BL 001610, and D, BL 001611).

31.     Berkshire further discovered that, on April 14, 2021, Fishman, by his criminal counsel, entered a stipulation amending the conditions of his pretrial release to lift the ban on his "fil[ing] any proof of service in any court" because "… in order to provide representation to clients, it may be necessary for [Fishman] to file proofs of service." (Fishman, Ryan Dep. 115:17-115:23, Fishman T (marked Genesee

12

County 0023- Genesee County 0024); See also Affidavit of Dennis Kelly ¶¶ 12-13, Exhibit E, BL 001617- BL 001618).

32.     Through its investigation, Berkshire discovered that, between September 2019 and March 2021, Fishman received treatment, advice, consultations, and diagnoses at Levine Chiropractic for musculoskeletal discomfort in his spine including chiropractic adjustments, home exercises, and social/occupational posture recommendations. (Exhibit RR to Deposition of Ryan Fishman, BL 001934-BL 001935; Fishman, Ryan Dep. 148:9-148:19; Levine, Richard Max, Dep. 8:22-10:18; 25:17-28:2, Exhibit 1 Levine Clinic 0046-0069; Affidavit of Dennis Kelly ¶¶ 38-39, Exhibit R).

33.     During Berkshire's investigation, Ari Fischman completed a questionnaire regarding Fishman's application for the Policy. (Fischman, Ari Dep. 90:4-92:10, Fischman K; Affidavit of Dennis Kelly ¶¶ 14-15, Exhibit F (BL 001000-BL 001004).

34.     Berkshire obtained a field interview of Fishman by Senior Field Claim Specialist, Robert Kolb, on August 17, 2021 during which Fishman confirmed he had no history of mental health issues and otherwise made representations regarding his claim and application. Mr. Kolb advised Fishman of the exclusions contained in the Policy that may exclude benefits based on the charges filed against him.

13

(Affidavit of Dennis Kelly ¶¶ 18-20, Exhibits H (BL 001036-BL 001042) and I (BL 001927, 2:01-2:06; 30:00-31:37)).

35.     On September 20, 2021, Berkshire Chief Claims Specialist, Dennis P. McManus placed a call to Fishman wherein Fishman admitted he treated with his chiropractor, Dr. Robert Levine, between the time he completed Application for Insurance: Part II and the time he signed the Declaration of Insurability. (Affidavit of Dennis Kelly ¶¶ 22-23, Exhibit J (BL 001162-BL 001164).

36.     On or about October 26, 2021, Dennis P. McManus requested an opinion from Karen Rugg, head of Individual Disability Underwriting for Berkshire, and the Disability Underwriting Department as to whether the Policy would have been issued had Berkshire been aware of the information adduced during its investigation and set forth in the preceding paragraphs herein. (Rugg, Karen Dep. 19:20-20:18;  Dennis Kelly ¶¶ 28-29, Exhibit M (BL 001373-BL 001376).

37.     On November 17, 2021, and amended via memorandum of December 8, 2021, Karen Rugg provided an Underwriting Opinion for review by claims based on her review of the information discovered during Berkshire's investigation. Relying on Berkshire Underwriting Guide, Karen Rugg concluded Berkshire would not have issued the Policy as issued, and at a minimum would have required an exclusion for coverage of a disorder or condition of the back, neck or spine. had underwriting been aware of Fishman's chiropractic care; nor would Berkshire

underwriting have approved issuing of the Policy had Fishman disclosed his April 6, 2021 arrest, the charges pending against him, and the change in job duties resulting from the conditions of his release. (Rugg, Karen Dep. 17:8-20:1, 36:7-37:19, 59:23-64:3; Affidavit of Dennis Kelly ¶¶ 36-37, Exhibit Q, BL 002684-BL 002695).

38.    In letters to Fishman dated September 23, 2021, October 12, 2021, October 28, 2021, November 16, 2021, December 6, 2021, Berkshire advised Fishman that in addition to reviewing his claim for benefits, Berkshire was also reviewing effectiveness of his coverage. Further Berkshire reserved its rights with respect to all defenses under the Policy regarding the validity of the coverage and the underlying claim. (Affidavit of Dennis Kelly ¶¶ 24-27, 30-35, Exhibit K, BL 001177; Exhibit L, BL 001325; Exhibit N BL 001381; Exhibit O BL 001660; Exhibit P 001695).

## BERKSHIRE'S RESCISSION OF THE POLICY

39.    On December 17, 2021, Mark Russell, Assistant Vice President, Claims Services and Solutions Group, Individual Markets, sent a Notice of Rescission to Mr. Fishman regarding the Policy. (Exhibit RR to Deposition of Ryan Fishman, BL 001928-BL 001938; Affidavit of Dennis Kelly ¶¶ 38-39, Exhibit R, BL 001726-BL 001735).

40.    Berkshire determined that, when Fishman completed the Declaration of Insurability on April 9, 2021 (three days after his arrest and under the bond

conditions referenced in paragraph 13 *supra*) he should have amended his response of "40" to Question 3C in the Application, which asked "How many hours per week are you at work in this occupation?" (Exhibit RR to Deposition of Ryan Fishman, BL 001928-BL 001938; Affidavit of Dennis Kelly ¶¶ 36-39, Exhibit R, BL 001726-BL 001727).

41.    Berkshire determined that, when Fishman completed the Declaration of Insurability on April 9, 2021 (three days after his arrest and under the bond conditions referenced in paragraph 13 *supra*) he should have amended his response from "Yes" to "No" to Question 3I in the Application, which asked "Are you presently employed and have you been continuously at work full time (at least 30 hours per week) performing the usual duties of your occupation for the past 180 days?" (Exhibit RR to Deposition of Ryan Fishman, BL 001928-BL 001938; Affidavit of Dennis Kelly ¶¶ 36-39, Exhibit R, BL 001727).

42.    Berkshire determined that, when Fishman completed the Declaration of Insurability on April 9, 2021 (three days after his arrest and under the bond conditions referenced in paragraph 13 *supra*) he should have amended his response from "No" to "Yes" to Question 3L in the Application, which asked "Do you plan to change your occupation, occupational duties, job, or employment within the next six months?" (Exhibit RR to Deposition of Ryan Fishman, BL 001928-BL 001938; Affidavit of Dennis Kelly ¶¶ 36-39, Exhibit R, BL 001728).

43.    Berkshire determined that, when Fishman completed the Declaration of Insurability on April 9, 2021 (three days after his arrest and under the bond conditions referenced in paragraph 13 *supra*) he should have amended his response from "No" to "Yes" to Question 6E in the Application, which asked "Do any of the following apply? 1) Your professional or occupational license or certification has ever been suspended, revoked, restricted, inactivated, surrendered, or the like; 2) There is a pending investigation or complaint concerning you with a regulatory, governmental, or other entity that oversees your profession; 3) You have ever been disbarred; or 4) You have ever been fined or sanctioned by an entity that oversees your profession." (Exhibit RR to Deposition of Ryan Fishman, BL 001928-BL 001938; Affidavit of Dennis Kelly ¶¶ 36-39, Exhibit R, BL 001729).

44.    Berkshire determined that, when Fishman completed the Declaration of Insurability on April 9, 2021 (three days after his arrest and under the bond conditions referenced in paragraph 13 *supra*) though he amended his "No" response to question 4H of the Medical Supplement, asking "whether in the past 10 years he had been diagnosed with, treated for, been given medical advice by a member of the profession or received consultation or counseling for any… condition of the back, neck spine/spinal cord, joints, limbs or bones," to "Yes," his response was not complete because he failed to report his treatment at Levine Chiropractic. (Exhibit

17

RR to Deposition of Ryan Fishman, BL 001928-BL 001938; Affidavit of Dennis Kelly ¶¶ 36-39, Exhibit R, BL 001730).

45.     Berkshire determined that, when Fishman completed the Declaration of Insurability on April 9, 2021 (three days after his arrest and under the bond conditions referenced in paragraph 13 *supra*) should have amended his "No" response to question 20 of the Medical Supplement, asking "Other than as previously stated in this application, are you currently or in the past 5 years, have you received medical advice, counseling, or treatment for any medical, surgical, psychological, or psychiatric condition from a medical professional or have you been a patient in a hospital, clinic, rehabilitation center, or other medical facility," to "Yes," in light of his treatment at Levine Chiropractic. (Exhibit RR to Deposition of Ryan Fishman, BL 001928-BL 001938; Affidavit of Dennis Kelly ¶¶ 36-39, Exhibit R, BL 001732).

46.     The false statements and misrepresentations set forth above materially affected the acceptance of the risk and/or the hazard assumed by Berkshire, in that had Berkshire been aware of the true facts concerning Fishman's medical condition and occupational status it would not have issued the Policy, or would have issued it other than as applied for. Berkshire therefore exercised its right to declare the Policy null and void from its inception.  (Exhibit RR to Deposition of Ryan Fishman, BL 001928-BL 001938; Affidavit of Dennis Kelly ¶¶ 36-39, Exhibit R, BL 001734).

47.     The December 17, 2021 Notice of Rescission states "Finally, please be advised that your claim under the Policy is not payable because based on the information currently in our file, the Company has rescinded Disability Income Policy Z4600540. If there is any additional information you would like to provide, or if you believe the information detailed above is incorrect in any way, please let us know. We will consider any information you provide and reserve all of our rights and defenses, including those which are not specifically described above. (Affidavit of Dennis Kelly ¶¶ 36-39, Exhibit R, BL 001735).

48.     Berkshire has issued checks to Fishman in an representing all premiums paid on the policy, plus interest, as well as a check for $500 in consideration for release of the Policy. (Affidavit of Dennis Kelly ¶¶ 40-41, Exhibit S, BL 003344-BL 003345).

### III.   <u>STANDARD OF REVIEW</u>

Summary judgment must be granted where the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Factual disputes are "material" if they might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the movant would bear the burden of proof on a claim at trial, "[i]t must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrat[e] why the record …

19

rule[s] out the prospect of the nonmovant prevailing." *Ascentium Capital LLC v. Littell*, 583 F. Supp. 3d 1234, 1237 (W.D. Mo. 2022) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, Fed. Prac. & Proc. Civ § 2727.1 Grounds for Summary Judgment Burden on the Moving Party (4th ed. 2021)). Where the movant would not bear the burden of proof at trial, its initial burden is to identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The burden then shifts to the nonmoving party, which may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Liberty Lobby, Inc.*, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."). If the non-movant's evidence is merely colorable, or is not significantly probative, summary judgment may be granted for the movant. *Liberty Lobby, Inc.*, 477 U.S. at 249–50.

## III.   **ARGUMENT**

### A.   *The Uncontroverted Material Facts Establish That Fishman's Misrepresentations Regarding his Arrest and Indictment Were Material and Entitled Berkshire to Rescind The Policy*

"MCL 500.2218 provides insurer may rescind an insurance policy if it discovers that an insured made a material misrepresentation on the application for

insurance and that the misrepresentation affected either the acceptance of the risk or the hazard assumed by the insurer." *Montgomery v. Fid. & Guar. Life Ins. Co*., 269 Mich. App. 126, 129, 713 N.W.2d 801, 803 (2005). A misrepresentation is material if an insurer would not have accepted the risk if it had known the true facts. *Oade v. Jackson Nat'l Life Ins. Co. of Mich.*, 465 Mich. 244, 254, 632 N.W. 2d 126 (2001). Signature by the insured attesting to the truth of the representations contained in an application, even if made after an application is completed, supports rescission if a material misrepresentation is present. *See Montgomery*, 269 Mich. App. at 130. "A contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty. *Montgomery v. Fid. & Guar. Life Ins. Co*., 269 Mich. App. 126, 130, 713 N.W.2d 801, 804 (2005).

When the Plaintiff initially provided responses to Application Part I in October 2020, they might have been true. But whether they were true then is immaterial. *See Montgomery*, 269 Mich. App. at 130. Fishman was arrested and charged with a series of felonies on April 6, 2021. (Fishman, Ryan Dep. 105:11-105:23). Then, three days later, on April 9, 2021, he signed an Amendment to the Application containing the following representation:

> It is agreed that these amendments and declarations are to be taken and considered a part of said application and subject to the representations and agreements therein, and that the said application and these

> amendments are to be taken as a whole and considered as the basis, and form part of the contract or policy issued thereon.
>
> It is further represented that the statements and answers in said application were complete and true when made and that no changes have occurred which would make said statements and answers incorrect or incomplete as of the present date.
>
> The undersigned declare that a duplicate copy of the foregoing amendment to application is attached to the policy.

(ECF No. 18, Fishman's Answer and Affirmative Defenses to Counterclaim, ¶ 14, PageID.303; Kelly Exhibit A, BL 000031-BL 000032; Fishman, Ryan Dep. 90:24-92:9). Fishman also signed the Declaration of Insurability on that day, which contains the following representation and which induced Berkshire's issuing of the Policy:

> For the policy identified above [Z4600540], I represent that since the date of the earlier of the Application for Insurance: Part II – Health and Medical History, the Representations to the Medical Examiner Part 2, or the Application for Disability Insurance: Part I to Berkshire Life Insurance Company of America (the "Application") I have not:
>
> ***
> 5. had any changes in occupation, job title, job duties, employment, income, residence, military status, or tobacco or nicotine use;
> ***
> 7. had a professional license suspended or revoked, nor have I been notified of any pending investigation or complaint concerning my professional licenses; or
> ***
> In addition to the above representation, I further represent that: 1 as of today's date, I am actively at work on a full time basis at least 30 hours per week performing the same duties and occupation(s) identified in the Application for Disability Insurance: Part 1; and 2 there are no

22

exceptions to the above representations as set forth below. [No exceptions indicated].

(Kelly Exhibit A, BL 000059).

Was Fishman truthful when he represented with the April 9, 2021 Amendment to the Application no changes had occurred such that his answers in Application Part I would be incorrect or incomplete as of April 9, 2021? Application Part I contains these questions with responses as follows:

## SECTION 3: OCCUPATIONAL INFORMATION

A.     Occupation : Attorney

***

C.     How many hours per week are you at work in this occupation? 40

***

I.     Are you presently employed, and have you been continuously at work full-time (at least 30 hours per week) performing the usual duties of your occupation for the Past 180 days? …...………………………..……………… x Yes ☐ No
If no, explain in Remarks & Special Requests Section 9.

***

L.     Do you plan to change your occupation, occupational duties, or employment within the next six months? ..☐ Yes x No
If Yes, provide details:

***

## SECTION 6: ADDITIONAL INFORMATION

***

E.     Do any of the following apply? 1 Your professional or occupational license or certification has ever been suspended, revoked, restricted, inactivated, surrendered, or the like; 2 There is a pending investigation or complaint concerning you with a regulatory, governmental, or other entity that oversees your professions; 3 You have ever been disbarred; or 4 You have ever been fined or sanctioned by an entity that oversees your profession. …………………………………………… ☐ Yes x No

23

(See Kelly Exhibit A, BL 000035-BL 000040).

April 9, 2021 was a Friday, Plaintiff was arrested and in custody for three or four hours on the preceding Tuesday, April 6, 2021. The Fishman Law Group offices were raided by authorities and computers and cell phones were confiscated. (Fishman, Ryan, 121:22-122:4, 125:7-126:4). The contention that Fishman worked 40 hours the week ending April 9, 2021 (3C), or that he was continuously at work full-time while performing the usual duties of his occupation (3I) would require one to stretch reason beyond its bounds. (See e.g., Fishman, Ryan 121:22-122:4 (testifying that his time while incarcerated was work). In addition, Fishman was released on April 6, 2021 and as a condition thereof he could not file proofs of service with any Court. (See Fishman, Ryan Dep. 113:9-114:1, Fishman Q; See also Affidavit of Dennis Kelly ¶¶ 10-11, Exhibit D, BL 001611). Therefore, pursuant to question 3L his occupational duties had changed, and he was directed to provide details – but didn't.

Under the same circumstances, Plaintiff's "No" response to Section 6, Question E was rendered false. Plaintiff's arrest and conditions of his release "restricted" "or the like" his occupational license by severely limiting his activities (so much so that he amended the conditions of his release by stipulation after obtaining the Policy). That limitation served as a sanction by the Court and was rendered with "the court's inherent power to oversee the relationship of attorneys."

*Souden v. Souden*, 303 Mich. App. 406, 411, 844 N.W.2d 151, 156 (2013). Further, given that computers and phones had been seized and the Plaintiff had appeared before the court, he was under investigation by an entity overseeing his profession. *See Id.* Certainly, this was an investigation "concerning" Plaintiff's professional licenses as set forth in Paragraph 7 in the Declaration of Insurability. (See Abramsky, Michael, Ph.D. Dep. 17:13-18:10). The Plaintiff's answers in Application Part I had become false by April 9, 2021, and his signing to verify in the Amendment to the Application and the Declaration of Insurability that the circumstances providing for his earlier answers had not changed was a misrepresentation.

The material and uncontroverted facts establish that Fishman failed to disclose his arrest, the charges against him, the restrictions set forth on his practice of law, the change in his occupational circumstances, and the ongoing investigation concerning he and his license. That representation is material if affected either the acceptance of risk or the hazard assumed by the insurer. MCL 500.2218. Karen Rugg, an underwriter for Berkshire and with support of Berkshire's own guidelines, testified unequivocally that the Policy would not have been issued if Plaintiff had not made these misrepresentations. (See e.g., Rugg, Karen Dep. 17:8-20:1, 36:7-37:19, 59:23-64:3; Affidavit of Dennis Kelly ¶¶ 36-37, Exhibit Q, BL 002684-BL 002695). The Plaintiff has adduced no evidence to controvert the testimony of Karen

Rugg and thus, Plaintiff's misrepresentations are material as a matter of law. *See Oade*, 465 Mich. at 25.

Moreover, discovery adduced in this case indicates the Policy was specifically underwritten for the Plaintiff as an attorney. (Rugg, Karen Dep. 37:1-38:17). Thus the lack of any restrictions or investigations into Plaintiff's role as an attorney was a *condition precedent* to his coverage. *Id*. Beyond just rescission, a condition precedent is a fact or event that the parties intend must take place before there is a right to performance. *Harbor Park Mkt., Inc. v. Gronda*, 277 Mich. App. 126, 131, 743 N.W.2d 585, 588 (2007). If the condition is not satisfied, there is no cause of action for failure to perform the contract. Because Plaintiff to failed to satisfy the condition that he be an attorney free of restrictions to obtain this preferential attorney disability income Policy, he is barred from making any claim on the Policy and Berkshire is entitled to a declaration the Policy is void *ab initio.*

## B. *The Uncontroverted Material Facts also Establish That Fishman's Misrepresentations About His Medical History Were Material and Entitled Berkshire to Rescind The Policy*

When Fishman applied for the Policy, and in particularly completed the medical portion of the Application via Berkshire's online private portal, he was asked the following question:

> In the past 10 years, have you been diagnosed with, treated for, tested positive for, been given medical advice by a member of

26

the medical profession or received consultation or counseling
for:

\*\*\*\*

**h.** any disease, disorder, or condition of the back, neck,
spine/spinal cord, joints, limbs or bones?

(Kelly Exhibit A, BL 000048). There is no dispute that Fishman received repeated

treatment from his chiropractor for his longstanding back condition, and there is no

dispute that Fishman did not disclose this medical treatment in response to the

question asked in the application. (Levine, Richard Max, Dep. 8:22-10:18; 25:17-

28:2, Exhibit 1 Levine Clinic 0046-0069).

Berkshire's underwriter has unequivocally opined that had Berkshire known

about Fishman's long history of chiropractic treatment it would not have approved

the Policy as issued, but instead would have required a specific exclusion related to

any conditions of the back, neck or spine. (Rugg, Karen Dep. 59:23-60:11). Dr.

Levine acknowledged and confirmed that he treated Fishman since 2019 for

conditions of the spine. (Levine, Richard Max, Dep. 17:3-28:2), Exhibit 1 Levine

Clinic 0046-0069). Fishman's chiropractic treatment with Dr, Levine falls squarely

within the specific question asked of him on the Application, including the

Declaration of Insurability. (BL 0000159 (have not… "received medical advice or

counseling from any physician, medical or mental health professional, counselor,

psychotherapist, *chiropractor* or other practitioner")(emphasis added). Fishman

failed to disclose his treatment with Dr. Levine on the Application, and in the Amendment wherein in he disclosed other medical treatment. He also concealed treatment he received from his chiropractor *after* November 2, 2020, but before he signed the Declaration of Insurability on April 9, 2021.  In each instance Fishman kept silent about his long-time, consistent and ongoing treatment with Dr. Levine. As underwriter Rugg testified, "He had three opportunities to tell us about his back history – his neck and back history, and he did not." (Rugg, Karen Dep. 45:15-45:17).

The is no dispute that had Berkshire been aware of this Plaintiff's ongoing treatment by Dr. Levine, it would not have approved the Policy as issued but would have required an exclusion for any claims related to back, neck or spine. (Rugg, Karen Dep. 59:23-60:11). In other words, it would not have insured that risk had it known the truth, such that it would not have issued the Policy as offered to Fishman. Plaintiff tries to hand-wave away his failure to disclose his full medical history by suggesting that because he disclosed that treatment to *another insurer*, on that other insurer's own form, via a third-party medical vendor, that disclosure must also be considered part of his Application for the Policy. But it is undisputed that Berkshire did not require that medical vendor to collect a detailed medical history from Plaintiff – to the extent the vendor did do so, it was on behalf of a different insurer, asking questions required by that insurer on its own medical form. (Rugg, Karen,

52:14-52:22).In fact, prior to Plaintiff meeting with the medical vendor (who only collected blood, urine, height and weight and basic medical information on behalf of Berkshire) he had already answered "no" to the Application's questions concerning treatment for conditions of the back, spine and limbs. Plaintiff *never* disclosed his chiropractic treatment to Berkshire, which, on its own, also allowed Berkshire to rescind the Policy.

Plaintiff also suggests that because he allegedly told his insurance broker Ari Fischman, about his chiropractic treatment (which his broker denies) that alleged knowledge can be imputed to Berkshire. But under Michigan law, an "independent agent or broker is considered an agent of the insured rather than an agent of the insurer." *West American Ins. Co. v. Michigan Mut. Ins. Co.*, 230 Mich. App. 305, 210 (1998). When a disability policy is sold by one who sells policies for multiple insurers, he is considered a broker and is deemed to be the agent of the insured, and not the agent of the insurer. *Harwood v. Auto Owners Ins. Co.*, 211 Mich. App. 249, 254 (1994). Testimony that one has "power to place insurance with various insurance companies" is "sufficient to establish that an independent insurance agent is the agent of the insured, not the insurer." *Mate v. Wolverine Mut. Ins. Co.*, 233 Mich. App. 14, 21 (1998). Plaintiff's broker unequivocally testified that he could place disability coverage with multiple carriers – he was not Berkshire's agent under Michigan law. (Fischman, Ari Dep. 86:14-88:16).

29

Importantly, even if Fischman were an agent of Berkshire – which he isn't; or if the medical examiner hired by another insurance company shared Plaintiff's health information with Berkshire – which he didn't, that would not excuse Plaintiff's failure to cure the misrepresentations in his application. Plaintiff had an opportunity to review his Application and the representation he made elsewhere in acquiring the Policy and correct any errors before submitting those materials, but he did not. "A contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." *Montgomery* 269 Mich. App. at 130.

The material and uncontroverted facts establish that Fishman failed to disclose medical information which was directly responsive to the questions asked of him on the Application, specifically his longstanding treatment for his spinal conditions by Dr, Levine. Had Berkshire known the truth, it would not have issued the Policy as it did but would have required an explicit exclusion addressing any condition of the back, neck or spine.  Fishman's misrepresentation about his medical history was material to the risk Berkshire assumed in issuing the Policy.  As a result, on these grounds alone the material and uncontroverted facts entitled Berkshire to rescission of the Policy.

**C.** ***The Uncontroverted Material Facts also Establish That Plaintiff's Claim for Fails for Lack of Any Material Fact Establishing He is Entitled to Benefits Under the Policy***

In an action for breach, "the burden of proof lies with the insured to show that the policy covered the damage suffered." *Solomon v. Royal Maccabees Life Ins. Co*., 243 Mich. App. 375, 379, 622 N.W.2d 101, 103 (2000). "Generally, disability insurance policies provide coverage for factual disabilities, such as illness or injury, but not for legal disabilities". *Id*. at 382. "If a claimant suffers from both a factual and a legal disability, however, and the factual disability is medically bona fide and genuinely arose before the legal disability, the fact that the legal disability arose later will not necessarily terminate a claimant's right to disability benefits." *Id.*

In *Solomon*, the Court of Appeals of Michigan surveyed cases across the Country to determine whether a physician who claimed his mental disability caused him to do the things that cost him his license and therefore his factual disability prevailed over the loss of his license which would have excluded him from coverage. *Id.* at 382-385. The *Solomon* Court ultimately affirmed the lower court's grant of summary disposition for the insurer. *Id*. at 387. The *Solomon* Court was inclined to follow the example set forth in *Massachusetts Mut. Life Ins. Co. v. Millstein*, 129 F.3d 688, 689 (2d Cir. 1997). There, an attorney made a claim on his policy alleging he suffered from attention deficit disorder on May 9, 1994. *Mass Mut*. 129 F.3d at 689. In fact, as far back as 1986 and through to 1994, the claimant was found to have

diverted large sums of client funds which ultimately led to his license being suspended on July 6, 1994. *Id*. at 690. Though the claimant submitted his claim before his license was suspended, the *Solomon* Court commented on the Massachusetts Mutual opinion saying it "emphasized that the defendant did not seek treatment for his disorders until his license to practice law was threatened." *Solomon* 243 Mich. App. at 384 (discussing *Mass Mut*. 129 F.3d at 691).

The Policy Plaintiff under which Plaintiff seeks benefits excludes benefits for any disability…

- caused by, contributed to by, or which results from, Your commission of, or attempt to commit, a felony as defined under local, state, or federal law; or
- caused by, contributed to by, or which results from, Your being engaged in an illegal occupation; or
- caused by, contributed to by, or which results from, any suspension, revocation, restriction, inactivation, surrender, or the like, of Your professional or occupational license or certification;

(Kelly Exhibit A, BL 000015). The Plaintiff was repeatedly advised that his claim was being reviewed both for exclusions and under the Policy. (See e.g., Kelly Exhibit I, BL 001927, 30:00-31:37). In order to establish breach, he must show that his claim is not excluded under the Policy. The Plaintiff admits that the firm at which he was managing partner was convicted of criminal enterprise. (Fishman, Ryan, Dep. 19:18-19:21; 32:25-33-4). His charges for criminal enterprise remain pending. There can be no dispute that the result of a guilty conviction will force him to surrender his license, and therefore it is presently threatened. To the extent Plaintiff

32

suffers from any psychological conditions making him unable to work, they are a result of the indictment pending against him and he did not seek treatment until after he was charged. (Abramsky, Michael Dep. 11:3-12:7; 20:2-20:6). As such, even if this Court does not rescind the Policy, Plaintiff  has adduced no material fact whereby he can vitiate the uncontroverted fact of his firm's being convicted and his disability resulting from his own alleged engagement in illegal activity which resulted in a restriction on his license. Therefore, the court should grant summary judgment in favor of Berkshire against Plaintiff's claim for breach of contract.

## IV.   <u>CONCLUSION</u>

For the forgoing reasons, Berkshire requests the Court summary judgment in favor of Berkshire and against Plaintiff as it relates to the sole count of alleged in Plaintiff's First Amended Complaint [ECF No. 4]; and in favor of Berkshire and as it relates to the Affirmative Defenses, and Counts I and II of Berkshire's Counterclaim for Rescission and Declaratory Judgement [ECF No. 15]. Berkshire further requests this Court find in its favor and enter an award of reasonable attorney's fees and costs in an amount to be established in separate proceedings following entry of judgment in its favor.

**LOCAL RULE CERTIFICATION: I, Ryan H. Voss, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides,**

and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14-point (for proportional fonts). I also certify that it is an appropriate length in light of the Court's granting of Defendant's request for relief from Local Rule 7.1(D)(3).

Dated: December 7, 2023       Respectfully Submitted,

CHITTENDEN, MURDAY & NOVOTNY LLC
/s/ Ryan H. Voss
One of its Attorneys
Elizabeth G. Doolin (IL#6210358)
Ryan H. Voss (IL#6304211)
Chittenden, Murday & Novotny LLC
303 W. Madison Street, Suite 2400
Chicago, Illinois 60606
(312) 281-3600 (tel)
(312) 281-3678 (fax)
edoolin@cmn-law.com
rvoss@cmn-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **7th** day of **December, 2023,** I electronically filed the foregoing **Motion for Summary Judgment** with the Clerk of the U.S. District Court, Eastern District of Michigan, Southern Division, using the CM/ECF system which will send notification of such filing to the following attorneys:

> Adam Kutinsky
> Kutinsky PC
> 370 E. Maple Rd. Floor 4
> Birmingham, MI 48009
> adam@kutinsky.com

> /s/ Ryan H. Voss
> One of its Attorneys
> Elizabeth G. Doolin (IL#6210358)
> Ryan H. Voss (IL#6304211)
> Chittenden, Murday & Novotny LLC
> 303 W. Madison Street, Suite 2400
> Chicago, Illinois  60606
> (312) 281-3600 (tel)
> (312) 281-3678 (fax)
> edoolin@cmn-law.com
> rvoss@cmn-law.com