## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RYAN J. FISHMAN,

      Plaintiff,

v.

BERKSHIRE LIFE INSURANCE COMPANY
OF AMERICA,

      Defendant.

Case No. 22-11058
HON. MARK A. GOLDSMITH

**PLAINTIFF RYAN J. FISHMAN'S RESPONSE IN OPPOSITION TO BERKSHIRE LIFE
INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

Does Defendant Berkshire Life Insurance Company of America fail to meet its burden to obtain the remedy of rescission because Plaintiff Ryan J. Fishman did not make a representation in his application that was actually false, the representations were not material, and the insurer waived all other defenses to coverage?

Plaintiff answers: "yes"

Defendant answers: "no"

## CONTROLLING/MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 56

MCL 500.2218

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)

*Hughes v. John Hancock Mutual Life Insurance Co.,* 351 Mich. 302, 312, 88 N.W.2d 557, 563 (1958)

*Prudential Ins Co v. Cusick,* 369 Mich 269, 286; 120 NW2d 1 (1963)

*Mutual Benefit Life Ins Co v Abbott,* 9 Mich App 547; 157 NW2d 806 (1968)

*Marthison v. North British and Mercantile Ins. Co.*, 64 Mich. 372, 384; 31 N.W. 291 (1887)

*Klapp v United Ins Group Agency*, 468 Mich 459, 471; 663 NW2d 447 (2003)

*Langley v. Auto-Owners Life Ins. Co.*, No. 300517 (Mich. App. Jun 28, 2012)

*Cincinnati Ins. Co. v. Hall, No*. 297600 (Mich. App. Jun 14, 2011)

*In re Certified Question, Wickersham v. John Hancock Mutual Life Ins. Co*., 413 Mich. 57, 65, 318 N.W.2d 456 (1982)

*Szlapa v. Nat'l Travelers Life Co.,* 62 Mich.App. 320, 325, 233 N.W.2d 270 (1975)

*Zulcosky v. Farm Bureau Life Ins. Co. of Michigan*, 520 N.W.2d 366, 206 Mich.App. 95 (Mich. App. 1994)

*Prudential Insurance Co. of America v. Cusick*, 369 Mich. 269, 291, 120 N.W.2d 1, 12 (1963)

*Schwind v. Yacenick,* 9 Mich.App. 597, 157 N.W.2d 788 (1968)

*Fleet Service, Inc. v. Aetna Life & Casualty Co.*, 54 Mich.App. 482, 487, 221 N.W.2d 206, 209--210 (1974), fn. 5, Lv. den. 392 Mich. 812 (1974).

*Howard v. Golden State Mut. Life Ins. Co*., 60 Mich.App. 469, 231 N.W.2d 655 (Mich. App. 1975)

*Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001)

*Doa Doa, Inc. v. Primeone Ins. Co*., No. 339215 (Mich. App. Oct 31, 2019)

*Bartlett Investments Inc. v Certain Underwriters at Lloyd's London*, 319 Mich. App. 54 (2017)

*Heniser v. Frankenmuth Mut. Ins. Co*., 449 Mich. 155, 161 n. 6 (1995)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RYAN J. FISHMAN,

     Plaintiff,

v.

BERKSHIRE LIFE INSURANCE COMPANY
OF AMERICA,

     Defendant.

Case No. 22-11058
HON. MARK A. GOLDSMITH

---

**PLAINTIFF RYAN J. FISHMAN'S RESPONSE IN OPPOSITION TO BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff RYAN J. FISHMAN by and though counsel KUTINSKY PC states the following in response to the Motion for Summary Judgment of Defendant BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA:

**I.**    **COUNTER-STATEMENT OF MATERIAL FACTS**

    1.    Admitted.

**FISHMAN'S APPLICATION FOR THE POLICY**

    2.    Admitted.

    3.    Admitted.

    4.    Admitted.

5.      Admitted that the cited language is an excerpt of a document which must be read as a whole.  [ECF No. 65-2, PageID.1286-1344]

6.      Admitted that the cited language is an excerpt of a document  which must be read as a whole. [ECF No. 65-2, PageID.1286-1344]

7.      Admitted.

8.      Admitted that the cited language is an excerpt of a document which must be read as a whole. [ECF No. 65-2, PageID.1286-1344]

9.      Admitted that Plaintiff answered "no" in Section C: 4.h. of the Medical Supplement for Individual Life and Disability Insurance - Part II. However, the question actually reads, "any disease, disorder or condition of the back, neck, spine/spinal cord, joints, limbs or bones?" [ECF No. 65-2, PageID.1333] which is an excerpt of a document which must be read as a whole. [ECF No. 65-2, PageID.1286-1344]

10.     Admitted that the cited language is an excerpt of a document which must be read as a whole. [ECF No. 65-2, PageID.1286-1344]

11.     Admitted that the cited language is an excerpt of a document which must be read as a whole. [ECF No. 65-2, PageID.1286-1344]

12.    Denied. Berkshire underwriter Karen Rugg testified that Berkshire

required Plaintiff to undergo an examination that was performed by Dr. Robert

Skalski:

| *Plaintiff counsel*: | ...did Berkshire have Mr. Fishman undergo a medical examination by a physician? |

**Ms. Rugg:** **Not a medical examination. We had him undergo a -- what we call a "short form." We had him -- we told him that we needed him to do a lab test, so a paramed company that is a third-party vendor went out and took his height and weight, and they took his blood as part of our request. That was the only thing we asked the paramed facility to provide us with.**

(Ex. A, Rugg Dep., 46:5–14)

***

*Plaintiff counsel*:    So you see that Robert Skalski appears to be the person that went out there [Plaintiff's residence]?

**Ms. Rugg:**    **Correct.**

*Plaintiff counsel*:    ...so is Robert Skalski, under that circumstance, the medical examiner?

**Ms. Rugg:**    **Yes.**

*Plaintiff counsel*:    And do you know, based on your review of the file, what happened when Robert Skalski went out to the house beyond what this form reflects?

**Ms. Rugg:**    **I would have no idea.**

(Ex. A, Rugg Dep., 49:8–18)

13.     Denied. Berkshire underwriter Karen Rugg testified that it required

Plaintiff to undergo an examination that was performed by Dr. Robert Skalski. (Ex.

A, Rugg Dep., 46:5–14) (Ex. A, Rugg Dep., 49:8–18) Additionally, insurance agent

Ari Fischman testified that Berkshire required Plaintiff to undergo the

examination. [ECF No. 65-4, PageID.1457] Further answering, the Berkshire

application for disability insurance Section 11 states, *with emphasis added*:

> This Application for Disability Insurance: Part I, Application for
> Insurance: Part II - Health and Medical History, *any required
> Representations to the Medical Examiner*, and any other
> supplements or amendments to this Application for Disability
> Insurance: Part 1 *will form the basis for, and become part of and
> attached to any policy or coverage issued and is herein referred to as
> the "Application."*

[ECF No. 65-2, PageID.1326]

14.     Admitted that the examination took place in 2021.

15.     Denied. Berkshire required Plaintiff to undergo the examination

conducted by Dr. Skalski. (Ex. A, Rugg Dep., 46:5–14) (Ex. A, Rugg Dep., 49:8–18)

During the examination Dr. Skalski completed and Plaintiff signed a medical

questionnaire dated March 17, 2021. (Ex. B, BL 001789 - 001791) At deposition,

Berkshire underwriter Karen Rugg testified that she "would have no idea" what

happened during the examination beyond what the medical questionnaire

reflects. (Ex. A, Rugg. Dep., 8–18) As evidenced by the medical questionnaire, Plaintiff disclosed his chiropractic treatment to Dr. Skalski who notated "Routine Chiropractic Exams 1-2 x/month @ Levine Clinic Northwestern Hway, Farmington Hills, MI" (Ex. B, BL 001790) Further answering, the Berkshire application states that "any required Representations to the Medical Examiner...will form the basis for, and become part of and attached to any policy or coverage issued and is herein referred to as the 'Application.'" [ECF No. 65-2, PageID.1326]

16.    Admitted that Plaintiff was arrested on April 6, 2021. Admitted that Plaintiff's home computers were confiscated. Admitted that *some* computers at Plaintiff's law firm were confiscated. Plaintiff's mobile phone *was not* confiscated. (Ex. C, Fishman Dep., 105: 19–106)

17.    Admitted that Plaintiff was *charged* with crimes but was not *convicted* of crimes. (Ex. D, BL 001596 - 001606) (Ex. C, Fishman Dep., 109: 10–14)

18.    Admitted that the terms of the bond were "do not work as a process server or file any proofs of service in any court." [ECF No. 65-2, PageID.1372-1373] Plaintiff is an attorney, not a process server, and his job duties did not include filing proofs of service.

19.     Denied that Plaintiff completed the amendment (Ex. C, Fishman Dep.,

91: 5–17); admitted that Plaintiff signed the amendment which is part of a

document which must be read as a whole. [ECF No. 65-2, PageID.1286-1344]

20.     Admitted that the cited language is an excerpt of a document which

must be read as a whole. [ECF No. 65-2, PageID.1286-1344]

21.     Admitted that the cited language is an excerpt of a document which

must be read as a whole. [ECF No. 65-2, PageID.1286-1344]

22.     Admitted that Plaintiff signed the declaration which is part of a

document which must be read as a whole. [ECF No. 65-2, PageID.1286-1344]

23.     Admitted that the cited language is an excerpt of a document which

must be read as a whole. [ECF No. 65-2, PageID.1286-1344] Further answering,

Plaintiff signed the declaration on April 9, 2021 which was after Plaintiff signed

the medical questionnaire on March 17, 2021 in which he disclosed his

chiropractic treatment. [ECF No. 65-2, PageID.1344] (Ex. B, BL 001789–001791)

The declaration states that it does not require disclosure of medical facts already

provided by Plaintiff. [ECF No. 65-2, PageID.1344] Further answering, Berkshire

underwriter Karen Rugg testified that the Declaration of Insurability did not

require Plaintiff to disclose medical information or other facts already provided by

him. (Ex. A, Rugg Dep., 45:18–22) Further answering, the Berkshire application

states that "any required Representations to the Medical Examiner...will form the

basis for, and become part of and attached to any policy or coverage issued and is

herein referred to as the 'Application.'" [ECF No. 65-2, PageID.1326]

24.    Admitted that the policy includes the documents and must be read

as a whole. [ECF No. 65-2, PageID.1286-1344]

### FISHMAN'S CLAIM FOR DISABILITY

25.    Admitted that Dr. Abramsky opined the indictment was the triggering

event leading to Plaintiff's diagnoses of adjustment disorder with anxiety. (Ex.E,

Abramsky Dep., 12:21–13:1) (Ex.F, April 30, 2021 Abramsky intake) Further

answering, Berkshire hired Dr. Howard Oaks to review Plaintiff's medical

condition and Dr. Oaks agreed with Dr. Abramsky's opinions.  (Ex.J, BL 001406)

26.    Admitted that Dr. Abramsky opined Plaintiff did not have premorbid

vulnerabilities and was not an individual that came with preexisting kinds of

conditions. (Ex.E, Abramsky Dep., 13:4–22) (Ex.F, April 30, 2021 Abramsky intake)

Further answering, Berkshire hired Dr. Howard Oaks to review Plaintiff's medical

condition and Dr. Oaks agreed with Dr. Abramsky's opinions.  (Ex.J, BL 001406)

27.    Admitted. (Ex.F, April 30, 2021 Abramsky intake) Further answering,

Berkshire hired Dr. Howard Oaks to review Plaintiff's medical condition and Dr.

Oaks agreed with Dr. Abramsky opinions.  (Ex.J, BL 001406)

28.     Admitted that the cited information is an excerpt from the Disability

Claimant's Statement and Description of Occupation submitted by Plaintiff which

must be read as a whole. (Ex.G, BL 000823 - 000829)

## BERKSHIRE'S CLAIM AND POLICY INVESTIGATION

29.     Admitted that Berkshire conducted a claim investigation.

30.     Admitted that Plaintiff was *charged* with crimes but was not

*convicted* of crimes. (Ex. D, BL 001596 - 001606) (Ex. C, Fishman Dep., 109: 10–14)

Further, admitted the terms of the bond were "do not work as a process server or

file any proofs of service in any court." [ECF No. 65-2, PageID.1372-1373] Plaintiff

is an attorney, not a process server, and his job duties did not include filing proofs

of service. (Ex.A, Rugg Dep., 21:16-23) (Ex.A, Rugg Dep., 22:6–25 - 23:1–18)

31.     Denied. The stipulation modified the bond conditions to limit the

prohibition of filing proofs of service to certain pleadings. (Ex.H, Genesee County

0023) Plaintiff is an attorney, not a process server, and his job duties did not

include filing proofs of service. (Ex.A, Rugg Dep., 21:16-23) (Ex.A, Rugg Dep., 22:6–

25 - 23:1–18)

32.     Denied. Berkshire required Plaintiff to undergo an examination by Dr.

Skalski. (Ex. A, Rugg Dep., 46:5–14) (Ex. A, Rugg Dep., 49:8–18) Dr. Skalski

completed and Plaintiff signed a medical questionnaire on March 17, 2021.

Plaintiff disclosed his chiropractic treatment to Dr. Skalski who noted "Routine Chiropractic Exams 1-2 x/month @ Levine Clinic Northwestern Hway, Farmington Hills, MI" (Ex. B, BL 001790)

33.     Admitted.

34.     Admitted that Mr. Kolb interviewed Plaintiff and generated a memorandum which must be read as a whole. (Ex.I, BL 001036 - 001042)

35.     Admitted.  Further answering, Berkshire required Plaintiff to undergo an examination by Dr. Skalski. (Ex. A, Rugg Dep., 46:5–14) (Ex. A, Rugg Dep., 49:8–18) Dr. Skalski completed and Plaintiff signed a medical questionnaire on March 17, 2021. Plaintiff disclosed his chiropractic treatment to Dr. Skalski who noted "Routine Chiropractic Exams 1-2 x/month @ Levine Clinic Northwestern Hway, Farmington Hills, MI" (Ex. B, BL 001790)

36.     Admitted.

37.     Denied. Ms. Rugg testified that, notwithstanding his chiropractic treatment, Berkshire *would have* issued the policy with *no additional premium*, but have excluded back, neck and spine injuries. (Ex.A, Rugg Dep., 64:1–5) Further, Ms. Rugg testified that Plaintiff was *never asked* if there was a felony charge against him in the application. (Ex.A, Rugg Dep., 69:2–4) Further, Ms. Rugg testified that Plaintiff's occupational duties were sales, operations, management,

supervision, accounting, and bookkeeping. (Ex.A, Rugg Dep., 22:6–25 - 23:1–18)

Further, Ms. Rugg testified that Plaintiff is an attorney, not a process server. (Ex.A,

Rugg Dep., 21:16-23) Further, Ms. Rugg was unable to articulate how service of

legal process was one of Plaintiff's job duties. (Ex.A, Rugg Dep., 38:22-24)

38.     Denied. Under Michigan law, Berkshire did not reserve its rights

under the policy when it opted to rescind coverage. "An insurer must explain the

policy provisions upon which it bases its opinion that coverage may not be

afforded and does not provide adequate notice by telling its insured only that it

reserves 'any defense' or 'waives none of its rights.'" *Marthison v. North British

and Mercantile Ins. Co.*, 64 Mich. 372, 384; 31 N.W. 291 (1887); *Cincinnati Ins. Co.

v. Hall, No*. 297600 (Mich. App. Jun 14, 2011). Berkshire's "Notice of Rescission"

states, "We...reserve all of our rights and defenses, including those which are not

specifically described above" which is insufficient under Michigan law. [ECF No.

65-2, PageID.1439] Further answering, Berkshire senior claims manager Dennis

Kelly failed to identify any exclusion under the policy that would bar coverage for

Plaintiff's claim. (Ex.K, Kelly Dep., 120:16–20);(Ex.K, Kelly Dep., 121:19–23).

**BERKSHIRE'S RESCISSION OF THE POLICY**

39.     Admitted. [ECF No. 65-2, PageID.1430-1439]

40.    Denied. Berkshire underwriter Karen Rugg testified that 30 hours per week "full time knowing that people do get some time off for PTO." Further, Ms. Rugg testified that "the only requirement we have is that it's 30 hours per week." (Ex.A, Rugg Dep., 25:14–25 - 25:1–15) Further, Ms. Rugg testified that Plaintiff's law license was active and was never suspended or revoked. (Ex.A, Rugg Dep., 32:1–12) Further, Plaintiff testified that he probably worked 80 hours per week, typically 10 to 12 hours during the day and additional hours after returning home. (Ex.C, Fishman Dep., 47:10–12); (Ex.C, Fishman Dep., 48:12–22) Further, Plaintiff testified that on the date of his arrest he was in custody for only 3-4 hours. (Ex.C, Fishman Dep., 48:15–21) Further, Plaintiff testified that he continued to work 10 - 12 hours per day after the indictment. (Ex.C, Fishman Dep., 124:16–23)

41.    Denied. Berkshire underwriter Karen Rugg testified that 30 hours per week "full time knowing that people do get some time off for PTO." Further, Ms. Rugg testified that "the only requirement we have is that it's 30 hours per week." (Ex.A, Rugg Dep., 25:14–25 - 25:1–15) Further, Ms. Rugg testified that Plaintiff's law license was active and was never suspended or revoked. (Ex.A, Rugg Dep., 32:1–12) Further, Plaintiff testified that he probably worked 80 hours per week, typically 10 to 12 hours during the day and additional hours after returning home. (Ex.C, Fishman Dep., 47:10–12); (Ex.C, Fishman Dep., 48:12–22) Further, Plaintiff

testified that on the date of his arrest he was in custody for only 3-4 hours. (Ex.C, Fishman Dep., 48:15–21) Further, Plaintiff testified that he continued to work 10 - 12 hours per day after the indictment. (Ex.C, Fishman Dep., 124:16–23)

42.   Denied. Berkshire underwriter Karen Rugg testified that Plaintiff's occupational duties were sales, operations, management, supervision, accounting, and bookkeeping. (Ex.A, Rugg Dep., 22:6–25 - 23:1–18) Further, Ms. Rugg testified that Plaintiff is an attorney, not a process server. (Ex.A, Rugg Dep., 21:16-23) Further, Ms. Rugg was unable to articulate how service of legal process was one of Plaintiff's job duties. (Ex.A, Rugg Dep., 38:22-24)  Further, Plaintiff testified that his occupational duties did not change prior to, during or after the indictment. (Exhibit.A, Fishman Dep., 257:11–25 - 258:1–16)

43.   Denied. Plaintiff's law license was active, not subject to any disciplinary action, and Plaintiff was and is in good standing with the State Bar of Michigan.[1] The State Bar informed Berkshire that "nothing is done with an Attorney's license after an arrest" and "between an arrest and a conviction or plea agreement, there is nothing stopping an Attorney from practicing law." (Ex. L, BL 001079) Further answering, MCR 9.101, *et seq.* governs attorneys' license to practice law in Michigan. MCR 9.107 states that subchapter 9.100 governs the

---

[1] https://sbm.reliaguide.com/lawyer/Fishman#license

procedure to discipline attorneys which is subject to the superintending control of the Supreme Court. The Attorney Grievance Commission is the prosecution arm of the Supreme Court for discharge of its constitutional responsibility to supervise and discipline Michigan attorneys. MCR 9.108(A). The Attorney Discipline Board is the adjudicative arm of the Supreme Court for discharge of its exclusive constitutional responsibility to supervise and discipline Michigan attorneys. MCR 9.110(A)

44.     Denied. Berkshire required Plaintiff to undergo an examination by Dr. Skalski. (Ex. A, Rugg Dep., 46:5–14) (Ex. A, Rugg Dep., 49:8–18) Dr. Skalski completed and Plaintiff signed a medical questionnaire on March 17, 2021. Plaintiff disclosed his chiropractic treatment to Dr. Skalski who notated "Routine Chiropractic Exams 1-2 x/month @ Levine Clinic Northwestern Hway, Farmington Hills, MI" (Ex. B, BL 001790)

45.     Denied. Berkshire required Plaintiff to undergo an examination by Dr. Skalski. (Ex. A, Rugg Dep., 46:5–14) (Ex. A, Rugg Dep., 49:8–18) Dr. Skalski completed and Plaintiff signed a medical questionnaire on March 17, 2021. Plaintiff disclosed his chiropractic treatment to Dr. Skalski who notated "Routine Chiropractic Exams 1-2 x/month @ Levine Clinic Northwestern Hway, Farmington Hills, MI" (Ex. B, BL 001790)

46.     Denied. Ms. Rugg testified that, notwithstanding his chiropractic treatment, Berkshire *would have* issued the policy with *no additional premium*, but have excluded back, neck and spine injuries. (Ex.A, Rugg Dep., 64:1–5) Further, Ms. Rugg testified that Plaintiff was *never asked* if there was a felony charge against him in the application. (Ex.A, Rugg Dep., 69:2–4) Further, Ms. Rugg testified that Plaintiff's occupational duties were sales, operations, management, supervision, accounting, and bookkeeping. (Ex.A, Rugg Dep., 22:6–25 - 23:1–18) Further, Ms. Rugg testified that Plaintiff is an attorney, not a process server. (Ex.A, Rugg Dep., 21:16-23) Further, Ms. Rugg was unable to articulate how service of legal process was one of Plaintiff's job duties. (Ex.A, Rugg Dep., 38:22-24)

47.     Admitted that the language is included in Berkshire's "Notice of Rescission" which is insufficient to reserve rights under Michigan law. [ECF No. 65-2, PageID.1439] Further answering, Berkshire senior claims manager Dennis Kelly failed to identify any exclusion under the policy that would bar coverage for Plaintiff's claim. (Ex.K, Kelly Dep., 120:16–20);(Ex.K, Kelly Dep., 121:19–23).

48.     Denied. Plaintiff rejected the return premium checks and Berkshire plans to remit the funds to the state government. (Ex.M)

## II.   STANDARD OF REVIEW

### A.   Fed. R. Civ. P. 56

Summary judgment is proper "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when there are "disputes

over facts that might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). At the summary judgment stage, the moving party bears the initial burden

of identifying those parts of the record which demonstrate the absence of any

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II.   THE INSURER'S BURDEN OF PROOF

To obtain the equitable remedy of rescission Berkshire must prove the

following by clear and convincing evidence: 1. Plaintiff made a representation in

the application that was actually false, and 2. The representation was material to

issuance of the policy. *Hughes v. John Hancock Mutual Life Insurance Co.,* 351 Mich.

302, 312, 88 N.W.2d 557, 563 (1958).  MCL 500.2218 governs rescission of disability

policies and states, in relevant part:

15

The falsity of any statement in the application for any disability insurance policy covered by chapter 34 of this code may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

(1) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.

(2) A representation is a statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false.

(3) In determining the question of materiality, evidence of the practice of the insurer which made the contract with respect to the acceptance or rejection of similar risks shall be admissible.

## A.   <u>Plaintiff Must Have Made a Representation That was False</u>

Before reaching the question of materiality, Berkshire must prove that

Plaintiff made a representation that was actually false. *Prudential Ins Co v. Cusick*,

369 Mich 269, 286; 120 NW2d 1 (1963) (stating that the insurer must prove

"actual falsity of [the] representation."); *Mutual Benefit Life Ins Co v Abbott*, 9

Mich App 547; 157 NW2d 806 (1968) (stating that the "truth or falsity of a

representation on an insurance policy should be examined in the light of what the

applicant knew or had reason to know at the time of his application). Whether an

insured's answers were false depends on the proper interpretation of the

questions and his answers, and if the questions or answers were ambiguous, the

ambiguity must be resolved in favor of the insured. *See Klapp v United Ins Group*

*Agency*, 468 Mich 459, 471; 663 NW2d 447 (2003); *Langley v. Auto-Owners Life*

*Ins. Co.*, No. 300517 (Mich. App. Jun 28, 2012). This is known as the rule of *contra*

*proferentem*. *Klapp*, 468 Mich. 459.

### 2.    If the Representation was False, it Must Also be Material

In Michigan, a misrepresentation must be "material" in order to allow

rescission of an insurance contract. M.C.L. § 500.2218(1); M.S.A. § 24.12218(1); *In*

*re Certified Question, Wickersham v. John Hancock Mutual Life Ins. Co*., 413 Mich.

57, 65, 318 N.W.2d 456 (1982). The insurer bears the burden of proving

materiality. *Szlapa v. Nat'l Travelers Life Co.,* 62 Mich.App. 320, 325, 233 N.W.2d

270 (1975). *Zulcosky v. Farm Bureau Life Ins. Co. of Michigan*, 520 N.W.2d 366,

206 Mich.App. 95 (Mich. App. 1994) The burden is with the insurance company,

*see Prudential Insurance Co. of America v. Cusick*, 369 Mich. 269, 291, 120 N.W.2d

1, 12 (1963) (opinion of Black, J.), to prove the charge of misrepresentation 'with

clear and convincing force'. *Hughes,* 351 Mich. 302, 312. The insurance policy is to

be liberally construed in favor of the insured. *See, for instance*, *Schwind v.*

*Yacenick,* 9 Mich.App. 597, 157 N.W.2d 788 (1968), *Fleet Service, Inc. v. Aetna Life & Casualty Co.*, 54 Mich.App. 482, 487, 221 N.W.2d 206, 209--210 (1974), fn. 5, Lv. den. 392 Mich. 812 (1974). *Howard v. Golden State Mut. Life Ins. Co.*, 60 Mich.App. 469, 231 N.W.2d 655 (Mich. App. 1975)

## III.   PLAINTIFF DID NOT MAKE A STATEMENT THAT WAS ACTUALLY FALSE

### A.   Plaintiff Disclosed his Chiropractic Treatment

Berkshire's records confirm that Plaintiff disclosed his chiropractic visits to Berkshire's medical examiner before the policy was issued. Berkshire underwriter Karen Rugg testified that the company required Plaintiff to undergo an examination conducted by Dr. Skalski on March 17, 2021. (Ex. A, Rugg Dep., 46:5–14) (Ex. A, Rugg Dep., 49:8–18) During the examination, Dr. Skalski completed and Plaintiff signed a medical questionnaire which disclosed his chiropractic treatment - as evidenced by Dr. Skalski's note, "Routine Chiropractic Exams 1-2 x/month @ Levine Clinic Northwestern Hway, Farmington Hills, MI" (Ex. B, BL 001790). (Ex. B, BL 001789 - 001791)

At deposition, Berkshire underwriter Karen Rugg testified that she "would have no idea" what happened during the examination beyond what the medical questionnaire reflects. (Ex. A, Rugg. Dep., 8–18) Berkshire's attempt to disclaim knowledge of answers Plaintiff provided to Dr. Skalski is inconsistent with its own

application which states, "any required Representations to the Medical Examiner...will form the basis for, and become part of and attached to any policy or coverage issued and is herein referred to as the 'Application.'" [ECF No. 65-2, PageID.1326]  Moreover, Michigan law states that the truth or falsity of a representation on an insurance application is examined in light of what the applicant knew or had reason to know. *Abbott*, *supra*.  In this case, the applicant (Plaintiff) had reason to know that Dr. Skalski was conducting an examination and gathering information on behalf of Berkshire.

Dr. Skalski came to Plaintiff's home and stated he was retained by Berkshire and another insurance company to conduct a medical examination. (Ex. C, Fishman Dep., 264:13–18.) Plaintiff understood that Dr. Skalski was Berkshire's medical examiner as that term is used in the application. (Ex. C, Fishman Dep., 250:17–24)  With the understanding that Dr. Skalski was Berkshire's medical examiner, he disclosed the chiropractic treatment which is notated on the medical questionnaire he signed. (Ex. C, Fishman Dep., 251:5-9; 253:1–7)  At no time during the examination did Dr. Skalski distinguish between information he was gathering for one insurance company or the other. (Ex. C, Fishman Dep., 103:7–12) Even more, Berkshire underwriter Karen Rugg testified that the final document signed by Plaintiff, the Declaration of Insurability, did not require

Plaintiff to disclose medical information or other facts he already provided. (Ex. A, Rugg Dep., 45:18–22)

### B.   <u>The Bond did not Change Plaintiff's Occupational Duties</u>

There is no dispute that Plaintiff was charged with but not convicted of any crimes (Ex. D, BL 001596 - 001606) (Ex. C, Fishman Dep., 109: 10–14) The application did not ask whether Plaintiff was charged with a crime (Ex.A, Rugg Dep., 69:2–4) so Berkshire argues that his occupational duties and hours changed because of the arrest and bond condition that he not work as a process server or file proofs of service. [ECF No. 65-2, PageID.1372-1373] Plaintiff is an attorney, not a process server, and his job duties did not include filing proofs of service. (Ex.A, Rugg Dep., 21:16-23) (Ex.A, Rugg Dep., 22:6–25 - 23:1–18)

There is no evidence to support Berkshire's argument that Plaintiff's occupational duties changed as a result of the bond. Berkshire concedes that Plaintiff was managing attorney of a law firm, not a process server, and his occupational duties were sales, operations, management, supervision, accounting, and bookkeeping. (Ex.A, Rugg Dep., 22:6–25 - 23:1–18) The company's underwriter, Ms. Rugg, could not explain how service of process was one of Plaintiff's job duties. (Ex.A, Rugg Dep., 38:22-24)

### C.   <u>The Indictment did not Change Plaintiff's Working Hours</u>

Berkshire concedes that the question regarding 30 hour per week assumes

"full time knowing that people do get some time off for PTO" and that the only

requirement is 30 hours per week no matter how the hours are met. (Ex.A, Rugg

Dep., 25:14–25 - 25:1–15) Plaintiff's law license was active before, during, and

after the indictment and he testified that he probably worked 80 hours per week,

typically 10 to 12 hours during the day and additional hours after returning home.

(Ex.C, Fishman Dep., 47:10–12); (Ex.C, Fishman Dep., 48:12–22) On the date of his

arrest, he was in custody for only 3-4 hours (Ex.C, Fishman Dep., 48:15–21) and

he continued to work 10 - 12 hours per day after the indictment. (Ex.C, Fishman

Dep., 124:16–23)

**D.**    **Plaintiff's Professional License was not Affected by the Indictment**

The State Bar of Michigan takes no action against an attorney who is

charged with a crime. Mr. Fishman's license to practice law was therefore active

and in good standing when he applied for the policy, and it remains active and in

good standing today.There is no authority in support of Berkshire's argument that

the criminal charges constituted a restriction on his law license. The state district

and circuit courts have no authority over an attorney's license which is governed

by MCR 9.101, *et seq.* The only court that has authority over Plaintiff's license is

the State Supreme Court, which has exclusive constitutional responsibility to

supervise and discipline Michigan attorneys. MCR 9.108(A). The Attorney

Grievance Commission is the prosecution arm and the Attorney Discipline Board is

the adjudicative arm of the Supreme Court. MCR 9.110(A)

Berkshire knew Plaintiff's license remained active and in good standing

because its records reflect making a call to the State Bar of Michigan and being

told "nothing is done with an Attorney's license after an arrest" and "between an

arrest and a conviction or plea agreement, there is nothing stopping an Attorney

from practicing law." (Ex. L, BL 001079)

## IV.    THE CHIROPRACTIC TREATMENT WAS NOT MATERIAL

Assuming, *arguendo*, that Plaintiff did not disclose his chiropractic

treatment, it was not material in any event. Ms. Rugg testified that,

notwithstanding his chiropractic treatment, Berkshire *would have* issued the

policy with *no additional premium*, but have excluded back, neck and spine

injuries. (Ex.A, Rugg Dep., 64:1–5) "A misrepresentation on an insurance

application is material if, given the correct information, the insurer would have

rejected the risk or charged an increased premium." *Oade v Jackson Nat'l Life Ins

Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001); *Doa Doa, Inc. v.

Primeone Ins. Co*., No. 339215 (Mich. App. Oct 31, 2019). Since Berkshire would

have still issued the policy for no additional premium, the chiropractic treatment

was immaterial and therefore not a basis to rescind the policy.

## V.   THE POLICY WAS NOT RESCINDED AND BERKSHIRE WAIVED ALL OTHER DEFENSES TO COVERAGE

Berkshire issued a "Notice of Rescission" in which it refused to pay Mr.

Fishman's claim based on the policy being void ab initio and of no effect. [ECF No.

39-4] Berkshire did not properly reserve rights to deny coverage under the policy

in the event that its rescission claim fails. At the very end of its "Notice of

Rescission" the company generally states that it "reserves all of its rights and

defenses" [ECF No. 39-4, PageID.601] which does not satisfy an insurer's

obligation to provide the insured notice of the specific policy language the insurer

may assert to deny coverage.

Michigan law states that a general reservation results in waiver of defenses

not specifically identified in writing by the insurer. *Bartlett Investments Inc. v*

*Certain Underwriters at Lloyd's London*, 319 Mich. App. 54 (2017). Even if

Berkshire did not waive its policy defenses before suit was filed, it clearly waived

them in discovery. Plaintiff's breach of contract complaint was filed on May 16,

2022 [ECF No. 1] and Berkshire's Answer, Affirmative Defenses and counterclaim

were filed on June 28, 2022. [ECF No. 15] As its Affirmative Defense No. 3

Berkshire generally asserts that "Plaintiff is precluded from recovering any relief sought under the terms, conditions, limitations, and exclusions of Policy No. Z4600540." [ECF No. 15, PageID.215]. In its counterclaim for rescission, the company asks the Court to declare the policy rescinded, void *ab initio*, and of no effect. [ECF No. 15, PageID.227]

Berkshire exclusively focused on its rescission claim for the entire discovery period and never clarified its Affirmative Defense No. 3. The last opportunity to do so was at the June 22, 2023 deposition of its claims manager Dennis Kelly when Plaintiff counsel asked, "Is there a particular exclusion that Berkshire believes would bar payment of benefits under the policy?" In response, Mr. Kelly stated, "There is no -- there are no benefits payable because there is not a policy in effect." [ECF No. 47-6, PageID.1061] Similarly, when Plaintiff counsel asked Mr. Kelly to identify the terms, conditions, limitations and exclusions that Berkshire refers to in its Affirmative Defense No. 3, he responded: "Again, there was no -- the policy was rescinded; therefore, there was no benefit due or payable. In addition, we did not have -- at the time of claims decision making, it was parallel to the same time that we were looking at rescission of the policy; and therefore, we rescinded the policy." [ECF No. 47-6, PageID.1064]

## VI.     <u>PLAINTIFF IS COVERED UNDER THE POLICY</u>

The insured bears the burden of proving coverage, while the insurer must

prove that an exclusion to coverage is applicable. *Heniser v. Frankenmuth Mut.*

*Ins. Co*., 449 Mich. 155, 161 n. 6 (1995). Plaintiff satisfied his burden of

establishing he suffered total disability under the policy by submitting the opinion

of a physician [ECF No. 4-1, PageID.107] who opined that he is unable to work in

his profession. [ECF No. 4-1, PageID.108] Berkshire's own expert Dr. Howard Oaks

reviewed Plaintiff's medical condition agreed with Dr. Abramsky.  (Ex.J, BL

001406)


KUTINSKY PC

<u>/s/ Adam Kutinsky</u>
Adam Kutinsky (P57900)
370 E Maple Rd 3rd Fl
Birmingham, MI 48009
Dated: January 18, 2024          (248) 712-1049
adam@kutinsky.com


25