## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RYAN J. FISHMAN,

      Plaintiff/Counter-Defendant,

v.

BERKSHIRE LIFE INSURANCE COMPANY
OF AMERICA,

      Defendant/Counter-Plaintiff.

Case No. 22-11058
HON. MARK A. GOLDSMITH

---

## PLAINTIFF RYAN J. FISHMAN'S BRIEF IN RESPONSE TO BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND AGAINST PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## CONCISE STATEMENT OF THE ISSUES PRESENTED

Did Berkshire waive all coverage defenses other than rescission by failing to 1. reserve rights, 2. plead affirmative defenses, and 3. disclose other defenses in discovery?

*Mr. Fishman answers: yes*

Can Berkshire obtain the equitable remedy of rescission if Mr. Fishman did not make an actual false statement during the application process?

*Mr. Fishman answers: no*

Does the surrendering of Mr. Fishman's license bar coverage under the policy if it occurred after his medical disability?

*Mr. Fishman answers: no*

Should the Court take judicial notice of Mr. Fishman's no contest plea in 2024 when the material issue in this case is whether he made a false representation in 2021?

*Mr. Fishman answers: no*

Should the Court deny Mr. Fishman disability benefits based on public policy despite the insurance company being the party which drafted the application and the insurance policy?

*Mr. Fishman answers: no*

**<u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>**

Fed.R.Civ.P. 8(c)

MCR 9.101*, et seq*

MCR 9.103

MCR 9.108

MCR 9.110

*Baker v. Marshall*, 323 Mich.App. 590, 919 N.W.2d 407 (2018)

*Dell v. Citizens Ins. Co. of America*, 312 Mich. App. 734, 753, 880 N.W.2d 280 (2015)

*Haskell v. Washington Township*, 864 F.2d 1266, 1273 (6th Cir. 1988)

*Johnson v. Yorkshire Ins. Co*., 224 Mich. 493, 496-497, 195 N.W. 45 (1923)

*Kirschner v. Process Design Associates, Inc*., 592 N.W.2d 707, 459 Mich. 587 (1999)

*Massachusetts Mut. Life Ins. Co. v. Millstein*, 129 F.3d 688, 689 (C.A.2, 1997)

*Massachusetts Mut. Life Ins. Co. v. Ouellette*, 159 Vt. 187, 192, 617 A.2d 132 (1992)

*Michigan Twp. Participating Plan v. Federal Ins. Co*., 233 Mich.App. 422, 435-436, 592 N.W.2d 760 (1999)

*Muscat v. Lawyers Title Ins. Corp*., 351 N.W.2d 893, 135 Mich.App. 26 (1984)

*Mutual Benefit Life Ins Co v Abbott*, 9 Mich App 547; 157 NW2d 806 (1968)

*Prudential Ins Co v. Cusick*, 369 Mich 269, 286; 120 NW2d 1 (1963)

*Rory v. Continental Ins. Co*., 473 Mich. 457, 703 N.W.2d 23, 169 NW 880 (2005)

*Shah v. Liberty Mut. Ins. Co*., 356062 (Mich. App. Jan 27, 2022)

*Smit v. State Farm Mut. Automobile Ins. Co*., 207 Mich.App. 674, 679-680, 525 N.W.2d 528 (1994)

*Solomon v. Royal Maccabees Life Ins. Co*., 243 Mich. App. 375, 379, 622 N.W.2d 101, 103 (2000)

*Swart v. Pitcher*, 9 F.3d 109, 1993 WL 406802 (6th Cir. 1993)

*Terrien v. Zwit*, 467 Mich. 56, 71, 648 N.W.2d 602 (2002)

*Wilkie v. Auto-Owners Ins. Co*., 664 N.W.2d 776, 469 Mich. 41 (2003)

*Zaremba Equip., Inc. v. Harco Nat'l Ins. Co*., 302 Mich.App. 7, 837 N.W.2d 686 (2013)

RYAN J. FISHMAN,

     Plaintiff/Counter-Defendant,

v.

BERKSHIRE LIFE INSURANCE COMPANY
OF AMERICA,

     Defendant/Counter-Plaintiff.

Case No. 22-11058
HON. MARK A. GOLDSMITH

**PLAINTIFF RYAN J. FISHMAN'S BRIEF IN RESPONSE TO BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND AGAINST PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff/Counter-Defendant RYAN J. FISHMAN through counsel KUTINSKY

PLLC states the following in response to the supplemental brief (ECF No. 88) filed

by Defendant/Counter-Plaintiff BERKSHIRE LIFE INSURANCE COMPANY:

**I.     BERKSHIRE WAIVED ALL DEFENSES TO COVERAGE OTHER THAN RESCISSION BY FAILING TO RESERVE RIGHTS, PLEAD AFFIRMATIVE DEFENSES, OR DISLOSE OTHER DEFENSES IN DISCOVERY.**

It is telling that Berkshire adopts the statements of its claims investigator

Robert Kolb (ECF No. 88, PageID.2691) but disclaims the statements of its medical

examiner Dr. Skalski (ECF No. 79, PageID.1919). Both men were agents of Berkshire

who met with Mr. Fishman and it is not the insurer's prerogative to choose after-the-fact which of them spoke on behalf of the company.

Berkshire desperately wants to assert exclusions that it abandoned when it rescinded coverage and it appears the company pins its hopes on Mr. Kolb. (ECF No. 88, PageID.2692). But Berkshire cannot overcome the timing of Mr. Kolb's statements which were made four months *before* Berkshire issued a notice of rescission to Mr. Fishman. (ECF No. 39-4) (ECF No. 88, PageID.2692) The law required Berkshire to reserve its rights at the time it denied coverage, not during the investigation of the claim. *Michigan Twp. Participating Plan v. Federal Ins. Co*., 233 Mich.App. 422, 435-436, 592 N.W.2d 760 (1999); *Smit v. State Farm Mut. Automobile Ins. Co*., 207 Mich.App. 674, 679-680, 525 N.W.2d 528 (1994); *see also Johnson v. Yorkshire Ins. Co*., 224 Mich. 493, 496-497, 195 N.W. 45 (1923). *Kirschner v. Process Design Associates, Inc*., 592 N.W.2d 707, 459 Mich. 587 (1999) ("Generally, once an insurance company has denied coverage to an insured and stated its defenses, the insurance company has waived or is estopped from raising new defenses.")

Moreover, statements made by an investigator in August 2021 cannot overcome the insurer's abandonment of coverage defenses in this litigation. It has long been established that the failure to raise an affirmative defense constitutes a

waiver of that affirmative defense. *Dell v. Citizens Ins. Co. of America*, 312 Mich. App. 734, 753, 880 N.W.2d 280 (2015), *see also Baker v. Marshall*, 323 Mich.App. 590, 919 N.W.2d 407 (Mich. App. 2018). Berkshire's attempt to assert exclusions it failed to plead as Affirmative Defenses [ECF No. 15, PageID.215] also conflicts with Fed.R.Civ.P. 8(c). Under this rule, a party may not raise an affirmative defense in a summary judgment motion or at trial if it has failed to include the defense in its responsive pleadings. *Haskell v. Washington Township*, 864 F.2d 1266, 1273 (6th Cir. 1988); *See, also Swart v. Pitcher*, 9 F.3d 109, 1993 WL 406802 (6th Cir. 1993).

Berkshire did not specify what exclusions it asserted in its Affirmative Defenses and - when given a final opportunity to do so on June 22, 2023 - its claims manager Dennis Kelly said, "There is no -- there are no benefits payable because there is not a policy in effect." [ECF No. 47-6, PageID.1061] [ECF No. 47-6, PageID.1064] Simply put, Berkshire waived all defenses other than rescission and cannot assert them in a motion for summary disposition or at trial. The insurer is limited to proving it is entitled to the equitable remedy of rescission based on representations made by Mr. Fishman in 2021.

## II. **BERKSHIRE CANNOT OBTAIN THE REMEDY OF RESCISSION BECAUSE MR. FISHMAN DID NOT MAKE A FALSE STATEMENT DURING THE APPLICATION PROCESS.**

Berkshire must prove that Mr. Fishman made a representation during the 2021 application process that was actually false. *Prudential Ins Co v. Cusick*, 369 Mich 269, 286; 120 NW2d 1 (1963) (stating that the insurer must prove "actual falsity of [the] representation."); *Mutual Benefit Life Ins Co v Abbott*, 9 Mich App 547; 157 NW2d 806 (1968). However, the insurer's extensive briefing fails to present any evidence of a misrepresentation in 2021.

Mr. Fishman voluntarily giving up his license to practice law does not confer authority to the State Circuit Courts where none exists. An attorney's license is governed by MCR 9.101*, et seq*. which confers exclusive authority to the Michigan Supreme Court. MCR 9.103 states, *in relevant part*:

> (A)     The license to practice law in Michigan is, among other things, a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters and to aid in the administration of justice as an attorney and counselor and as an officer of the court...These standards include, but are not limited to, the rules of professional responsibility and the rules of judicial conduct that are adopted by the Supreme Court.

*See also,* MCR 9.108 and 9.110 which grant powers over an attorney's law license to the Michigan Supreme Court, Attorney Grievance Commission, and Attorney

Discipline Board.  There is no evidence that these entities were investigating Mr. Fishman's license in 2021.

Berkshire argues that Mr. Fishman's plea of no contest in 2024 proves that his answers to application questions in 2021 was false. (ECF No. 88, PageID.2694) In its supplemental brief, Berkshire paraphrases one application question  as "whether 'there is a pending investigation or complaint concerning you with a regulatory, governmental, or other entity that oversees your profession.'" (ECF No. 88, PageID.2695) and another as "I have... 7. not had a professional license suspended or revoked, nor have I been notified of any pending investigation or complaint concerning my professional license."

The correct answers to these questions when Mr. Fishman signed the application documents on April 9, 2021 was "no." His license was active and in good standing and there was no pending investigation concerning his license with the Michigan Supreme Court, Attorney Grievance Commission, or Attorney Discipline Board. For these reasons, the representations were not false at the time they were made and cannot be used as a basis to rescind coverage.

**III.** **THE SURRENDERING OF MR. FISHMAN'S LICENSE CANNOT BAR COVERAGE BECAUSE IT OCCURRED AFTER HIS MEDICAL DISABILITY.**

In its supplemental brief, Berkshire argues that *Solomon v. Royal Maccabees Life Ins. Co.*, 243 Mich. App. 375, 379, 622 N.W.2d 101, 103 (2000) is analogous to this action. However, *Solomon* is 100% distinguishable from Mr. Fishman's claim and, if anything, it supports awarding him disability benefits. *Solomon* involved a physician who voluntarily surrendered his medical license *before* he made a claim for disability benefits arising from bi-polar disorder. The *Solomon* court found the surrendering of his license to be a legal disability which preceded his medical (factual) disability and was therefore the cause of his inability to work. In so holding, the *Solomon* court specifically distinguished its holding from cases where the medical disability precedes the legal disability:

> If a claimant suffers from both a factual and a legal disability, however, and the factual disability is medically bona fide and genuinely arose before the legal disability, the fact that the legal disability arose later will not necessarily terminate a claimant's right to disability benefits.

*Solomon*, 622 N.W.2d 105. There is no question that in April 2021 Mr. Fishman was determined to be medically disabled by his treating physician as well as Berkshire's own medical expert.[1] His medical disability was therefore bona fide

---

[1] On April 30, 2021, Mr. Fishman's treating psychologist, Dr. Michael Abramsky, diagnosed him with Adjustment Disorder with Anxiety, determined he was not able to work as an attorney, and advised him to stop working. (ECF No. 39-3, Page ID.587) Berkshire hired one of its panel experts, Dr. Howard J. Oakes who

and genuinely arose four years before he surrendered his license in 2024. Under the law as declared by the Michigan Court of Appeals, the surrendering of his license will not terminate his right to disability benefits because it arose after his medical disability. *Solomon*, *supra*.

The *Solomon* court cites *Massachusetts Mut. Life Ins. Co. v. Millstein*, 129 F.3d 688, 689 (C.A.2, 1997) and *Massachusetts Mut. Life Ins. Co. v. Ouellette*, 159 Vt. 187, 192, 617 A.2d 132 (1992) as persuasive authority. Like *Solomon,* both *Millstein* and *Ouellette* involved professionals who surrendered their licenses before being diagnosed with a medical disability and before making disability claims. *Solomon*, at 622 N.W.2d 105. It was this timing that the Michigan Court of Appeals found to be the key determining factor, "Not until plaintiff decided to voluntarily surrender his license was he unable to carry out the duties of his regular occupation." *Solomon*, at 622 N.W.2d 106.

As established by the Michigan Court of Appeals, the voluntary surrendering of Mr. Fishman's license cannot terminate his right to disability benefits because it occurred *after* his medical diagnosis for depression which served as the basis for his disability claim. *Solomon*, 622 N.W.2d 105. Further, in *Solomon* the claimant

---

opined that Mr. Fishman was properly diagnosed by Dr. Abramsky and could not work as an attorney. (ECF No. 47-1, PageID.837)

had worked for over ten years after being diagnosed with bi-polar disorder and did

not make a disability claim until he gave up his license to practice medicine.

*Solomon*, 622 N.W.2d 102 - 103. Conversely, Mr. Fishman did not have a history of

depression and only made a claim for benefits after being diagnosed with the

condition and determined to be disabled. (ECF No. 39-3, Page ID.587).  The insurer

in *Solomon* also relied on expert opinions that the claimant was not disabled from

a mental illness whereas Berkshire's expert concluded that Mr. Fishman was in fact

disabled from depression. (ECF No. 47-1, PageID.837)

 In sum, *Solomon* is distinguishable from this case and there is no evidence to

support Berkshire's argument that Mr. Fishman was not totally disabled as defined

under the policy.

## IV.   JUDICIAL NOTICE IS UNNECESSARY BECAUSE MR. FISHMAN'S PLEA OF NO CONTEST IS IRRELEVANT TO THE MATERIAL ISSUES IN DISPUTE.

 There is no use in taking judicial notice of anything that occurred after Mr.

Fishman signed the Berkshire application documents in 2021 because the

material issue before the Court is whether the representations made in the

application were true at the time they were made. Mr. Fishman has consistently

objected to the relevancy of the criminal proceedings and Berkshire has

consistently presented the Court with information about the proceedings over his

objections. MRE 401 states:

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

The plea to no contest is irrelevant to this case because Berkshire's right of

rescission is dependent upon events that occurred in 2021, not 2024. The insurer

must prove rescission because it waived all other defenses to coverage when it

did not reserve other defenses to coverage, did not plead other Affirmative

Defenses, and did not identify other defenses when asked in discovery. For these

reasons, it is of no use to take judicial notice of anything connected to the plea of

no contest.

## V.    MICHIGAN PUBLIC POLICY STRONGLY FAVORS FREEDOM TO CONTRACT.

We can safely say "the shoe is on the other foot" when Berkshire, an

insurance company, argues that public policy should preempt a clear and

unambiguous contract provision. The law in Michigan, which is routinely argued

by insurance carriers to enforce draconian policy language at the expense of

individuals, is that parties are free to contract and that courts must enforce them

as written. *Wilkie v. Auto-Owners Ins. Co*., 664 N.W.2d 776, 469 Mich. 41 (Mich. 2003). In *Terrien v. Zwit*, 467 Mich. 56, 71, 648 N.W.2d 602 (2002), the Michigan Supreme Court stated:

> The notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable. It draws strength from common-law roots and can be seen in our fundamental charter, the United States Constitution, where government is forbidden from impairing the contracts of citizens. Our own state constitutions over the years of statehood have similarly echoed this limitation on government power. It is, in short, an unmistakable and ineradicable part of the legal fabric of our society.

For over a century, insurance companies have championed freedom of contract in opposition of insureds' public policy arguments and have been largely successful in Michigan. Insurers argued against public policy to shorten the statute of limitations on insureds' breach of contract claims, *Rory v. Continental Ins. Co*., 473 Mich. 457, 703 N.W.2d 23, 169 NW 880 (2005), to prevent adoption of the reasonable expectations doctrine, *Wilkie, supra,* to enforce insurance policies despite illusory coverage, *Muscat v. Lawyers Title Ins. Corp*., 351 N.W.2d 893, 135 Mich.App. 26 (1984), to shift liability to an insured because he did not read his insurance policy, *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co*., 302 Mich.App. 7, 837 N.W.2d 686 (2013), and to bind insureds to policy language they read but didn't understand. *Shah v. Liberty Mut. Ins. Co*., 356062 (Mich. App. Jan 27, 2022).

Had Berkshire wanted to know if Mr. Fishman was charged with a crime before issuing the policy, it should have included it as a question in the application. Had Berkshire wanted to deny coverage to Mr. Fishman based on an exclusion to coverage as opposed to rescinding the policy, it should have reserved the right to enforce the exclusion in its notice of reservation. And if Berkshire wanted to defend this case based on a policy exclusion, its claims manager should have stated that when he was deposed in this case.

An insurance company cannot use public policy to avoid enforcement of its own contract documents and pleadings.

KUTINSKY PLLC

/s/ Adam Kutinsky
Adam Kutinsky (P57900)
370 E. Maple Rd. 3rd Fl.
Birmingham, MI 48009
(248) 712-1049
adam@kutinsky.com

Dated: April 16, 2024