UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN J. FISHMAN,

    Plaintiff,

v.

BERKSHIRE LIFE INSURANCE
COMPANY OF AMERICA,

    Defendant.
_____/

Case No. 22-cv-11058

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 75), (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 65), (3) GRANTING DEFENDANT'S MOTION FOR JUDICIAL NOTICE (Dkt. 90), AND (4) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF (Dkt. 92)**

Plaintiff Ryan Fishman brought this breach of contract case against Defendant Berkshire Life Insurance Company of America after Berkshire failed to compensate Fishman under a disability income insurance policy. See Am. Compl. (Dkt. 4). Berkshire counterclaimed for recission and for a declaratory judgment that the policy is null and void and that Berkshire has no obligation or liability thereunder. See Counterclaim (Dkt. 15). Both parties filed motions for summary judgment (Dkts. 65, 75). For the reasons that follow, the Court denies both motions for summary judgment.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motions for summary judgment, the briefing includes Berkshire's response (Dkt. 79), reply (Dkt. 82), and supplemental brief (Dkt. 88) and Fishman's response (Dkt. 80), reply (Dkt. 84), and supplemental brief (Dkt. 89).

## I. BACKGROUND

The following relevant facts are undisputed.

In October 2020, Fishman engaged an insurance broker and began the process of applying for two insurance policies: a disability insurance policy from Berkshire[2] and a life insurance policy from Principal Life Insurance Company. Def. Statement of Material Facts (SOMF) ¶¶ 2–3; Fischman Dep. at 49 (Dkt. 65-4). At that time, Fishman read through and signed an application and supplement to the application for Berkshire Policy No. Z4600540 (Policy). Def. SOMF ¶¶ 1, 3; Fishman Dep. at 58–59 (Dkt. 67); Policy at PageID.1550–1559 (Dkt. 66). In this October application, Fishman answered initial questions about his occupation. Policy at PageID.1550–1558. A month later, Fishman signed a supplement to the application, in which he answered additional questions about his occupation and medical history. Def. SOMF ¶ 8; Policy at PageID.1559–1573. During this time, Fishman was working as an attorney and the managing partner for Fishman Group P.C., a law firm. Def. Mot. for Summ. J. at 1.

Berkshire then requested additional medical information including height, weight, and a blood test. Def. SOMF ¶ 12; Rugg Dep. at 46 (Dkt. 65-5). In March 2021, Fishman met with Dr. Robert Skalski. Def. SOMF ¶ 15 (citing Fishman Dep. at 99–104). Berkshire asserts that the doctor collected height, weight, and a blood sample from Fishman on behalf of Berkshire and examined him on behalf of Principal. Def. SOMF ¶ 15. Fishman asserts that if the doctor performed distinct actions on behalf of Berkshire and other actions on behalf of Principal, he was

---

Fishman also filed a motion for leave to file a second supplemental brief (Dkt. 92), which Berkshire opposed (Dkt. 93). Because the Court finds the supplemental brief would have no bearing on the outcome of the motions, it denies the motion.

[2] Some of the documents in the record are labeled "Guardian" instead of Berkshire. Berkshire is a subsidiary of Guardian. See Policy at PageID.1559 (Dkt. 66).

not made aware of that dichotomy. Pl. Resp. to Def. Mot. for Summ. J. at 18–20. According to Fishman, Dr. Skalski represented that he was retained by both Berkshire and Principal to conduct a medical examination and did not specify what information was being collected by Berkshire and what information was being collected by Principal. Id. During this examination, Fishman disclosed that he had been receiving ongoing chiropractic treatment, information he had not disclosed on his application forms. See Fishman Dep. at 100–104.

On April 6, 2021, Fishman was arrested at his home. Def. SOMF ¶ 16; Fishman Dep. 105. Fishman had not yet completed the process of applying for the policy—he had yet to complete the amendment to the application and the declaration of insurability. Def. SOMF ¶¶ 16, 19, 22. That same day, he was charged in Genesee County, Michigan, with felony crimes including forgery, obstruction of justice, and criminal enterprise. Def. SOMF ¶ 17; 67th District Court Records at PageID.1587–1597 (Dkt. 66).[3] As a condition of release, Fishman signed a bond agreement providing that he could not work as a process server and could not file any proofs of service with the court. Def. SOMF ¶ 18; Fishman Dep. at 112–115. A week later, Fishman's counsel entered a stipulation amending the conditions of his pretrial release to amend the ban on his filing any proof of service in any court to cover only the filing of certain proofs of service. Def. SOMF ¶ 31; Stip. Amending Conditions of Pretrial Release at PageID.1605–1606 (Dkt. 66).

On April 9, 2021, Fishman completed and signed an amendment to the policy application, changing a few of his answers and certifying that anything left unchanged was correct. Def. SOMF ¶ 19; Policy at PageID.1548–1549. He did not include any information about his arrest or criminal

---

[3] He was later charged with similar offenses in Oakland County and Ingham County. See Def. Suppl. Br. at 5; Oakland County Plea Agreement (Dkt. 88-3); Ingham County Records Search (Dkt. 88-4). The charges were related to allegations that Fishman engaged in a criminal enterprise to forge proofs of service and affidavits of service of summons of complaints for his own financial gain. Def. SOMF ¶ 17.

charges. See Policy at PageID.1548–1549. On the same day, he signed a declaration of insurability, in which Fishman made final representations and which induced Berkshire to issue the policy. Def. SOMF ¶¶ 22–23; Policy at PageID.1576. On April 24, 2021, after receiving the amendment and the declaration of insurability, Berkshire issued the policy. Def. SOMF ¶ 24.

In July 2021, Fishman submitted a disability claim to Berkshire. Def. SOMF ¶ 28. He listed his disabling condition as depression and anxiety and stated that the first instance of symptoms was April 15, 2021. Id.; Disability Claim at PageID.1578–1584 (Dkt. 66). As his treating physician, he listed a psychologist, Dr. Michael Abramsky, who he began seeing the week after Berkshire issued the policy. Def. SOMF ¶ 28; Abramsky Dep. at 11–13 (Dkt. 68).

Upon receiving Fishman's disability claim, Berkshire began an investigation of the claim and policy. Def. SOMF ¶ 29; Kelly Aff. ¶ 7 (Dkt. 66)). Between September and December of 2021, Berkshire sent letters to Fishman updating him on the investigation and explaining that, in addition to reviewing his disability insurance claim, they were "reviewing the effectiveness of [his] coverage." Letters at PageID.1634–1643 (Dkt.66). In December 2021, upon completing the investigation, Berkshire sent a notice of recission to Fishman, the basis for which was that Fishman had made false statements and misrepresentations throughout the application process. Notice of Recission at PageID.1662–1671 (Dkt. 66). The notice of recission stated that Fishman's disability claim was "not payable because based on the information currently in our file, the Company has rescinded [the policy]." Id. at PageID.1671.

On February 12, 2024, Fishman signed a plea agreement in Oakland County, pleading no contest to the felony forgery counts against him there. Oakland County Plea Agreement (Dkt. 88-3). Pursuant to that agreement, Fishman agreed to "resign his license to practice law within two business days of pleading guilty" and agreed that he would "not reapply for licensure to practice

4

law in the State of Michigan for a period of 10 years form the date he enters his plea." Id. at PageID.2712. Fishman also pleaded guilty to forgery and obstruction of justice in Genessee County, see Genessee County Court Record (Dkt. 90-1)[4], and no contest in Ingham County to subornation of perjury, see Def. Suppl. Br. at 8 (citing Ingham County Records Search (Dkt. 88-4)).

Fishman filed this action in May 2022, claiming that Berkshire was in breach of the policy. Berkshire counterclaimed for recission and for a declaratory judgment that the policy is null and void and that Berkshire has no obligation or liability thereunder. See Counterclaim. The parties filed their motions for summary judgment in December 2023.

## II. ANALYSIS[5]

### A. Recission

Mich. Comp. L. § 500.2218 provides that an insurer may rescind an insurance policy where the insured makes a material misrepresentation. It defines a misrepresentation as a "false representation" and states that "[n]o misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract." Id.

Plaintiff argues that Berkshire must prove the elements of recission by clear and convincing

---

[4] Berkshire filed a motion requesting the Court take judicial notice of the Genessee County court records (Dkt. 90). Fishman filed a response in opposition (Dkt. 91), arguing that the records are not relevant. Because the Court finds that the records are relevant and that they are judicial records that are "not subject to reasonable dispute," the Court grants the motion for judicial notice. See United States v. Ferguson, 681 F.3d 826, 834 (6th Cir. 2012).

[5] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). A court will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by

evidence, Pl. Resp. to Def. Mot. for Summ. J. at 15, while Berkshire argues that it only needs to prove the elements by a preponderance of the evidence, Def. Reply at 4–5. The Court need not decide this question, as it does not make a difference to the Court's analysis.

1.  **Chiropractic Treatment**

One category of material misrepresentations Berkshire relies on for its recission claim pertains to Fishman's failure to disclose his history of ongoing chiropractic treatment. See Def. Mot. for Summ. J. at 26–30. Clinic records show that Fishman began receiving treatment from Levine Chiropractic for musculoskeletal discomfort in his spine in September 2019, and made regular return visits through at least March 2021. Def. SOMF ¶ 32; Levine Clinic Notes at PageID.1784 (Dkt. 69).

Berkshire notes that, when Fishman applied for the policy, he was asked the following question as part of a medical supplement:

> In the past 10 years, have you been diagnosed with, treated for, tested positive for, been given medical advice by a member of the medical profession or received consultation or counseling for:
>
> \*\*\*
>
> **h.** any disease, disorder, or condition of the back, neck, spine/spinal cord, joins, limbs or bones?

Def. Mot. for Summ J. at 26–27 (citing Policy at PageID.1565). In November 2020, when he signed the medical supplement, Fishman answered "No." Because Fishman began his ongoing chiropractic treatment in September 2019, Berkshire argues that his answer in 2020 constitutes a misrepresentation. Id.

---

coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

In April 2021, when Fishman completed the declaration of insurability, he changed his "No" answer to "Yes," but still failed to report his chiropractic treatment, instead noting an unrelated knee and thigh injury from 2017. Def. SOMF ¶¶ 20, 44; Notice of Recission at PageID.1666. Berkshire also asserts that, when completing the declaration of insurability, Fishman should have amended his "No" response to question 20 of the medical supplement, which asked: "Other than as previously stated in this application, are you currently or in the past 5 years, have you received medical advice, counseling, or treatment for any medical, surgical, psychological, or psychiatric condition from a medical professional or have you been a patient in a hospital, clinic, rehabilitation center, or other medical facility?." Def. SOMF ¶ 45.

Fishman argues that he did not need to include information about his chiropractic treatment when filling out the medical supplement or the declaration of insurability because he disclosed the treatment during his medical examination with Dr. Skalski on March 17, 2021. Pl. Resp. to Def. Mot. for Summ. J. at 18–20. According to Fishman, this disclosure to Dr. Skalski absolves him of any misrepresentation associated with the policy application. Id. Fishman makes two arguments in support of this position. First, Fishman notes that the declaration of insurability states that it does not require disclosure of medical facts already provided by him. Declaration of Insurability at PageID.1576. This was also acknowledged by Karen Rugg, an underwriter for Berkshire, during her deposition. Rugg Dep. at 45. Second, Fishman notes that the application states that "any required Representations to the Medical Examiner . . . will form the basis for, and become part of and attached to any policy or coverage issued and is herein referred to as the Application." Policy at PageID.1558 (Dkt. 66).

Berkshire does not dispute that Fishman disclosed the chiropractor treatment to Dr. Skalski during his March 17, 2021 examination. Rather, Berkshire contends that Fishman's disclosure of

7

his chiropractic treatment to Dr. Skalski does not absolve him of his failure to report it during the application process because the only information Berkshire requested of Dr. Skalski—and the only information it received from him—was Fishman's height, weight, and blood sample. Def. Reply at 1–3. Rugg testified in her deposition that Berkshire did not know that Dr. Skalski was conducting a medical exam. Rugg Dep. at 52.

In response, Fishman provided testimony and evidence indicating that he thought that his disclosure of the chiropractic treatment to Dr. Skalski was a disclosure to Berkshire. See Pl. Resp. to Def. Mot. for Summ. J. at 18–20; Fishman Dep. at 103. Fishman testified that Dr. Skalski did not specifically tell him which forms pertained to which insurance policies and rather "indicated that [the forms pertained to both insurance policies." Fishman Dep. at 103. He also testified that the page on the medical exam that he signed did not include the name of either insurance company. Id. at 103.

The Court concludes there is a question of fact as to whether the communication to Dr. Skalski should be deemed a communication to Berkshire. Whatever limited role the doctor played on behalf of Berkshire, that limitation was not made apparent to Fishman. The law of agency provides that where an agent is held out as apparently being clothed with general authority, his actual limited authority must be brought home to any third-party who deals with the agent. See Hirschmann v. Iron Range & H.B.R. Co., 56 N.W. 842, 846 (Mich. 1893) ("A general agency is therefore constituted, not by the authority which the agent actually receives from his principal, but by that which the latter allows the agent to assume.") (punctuation modified).

A layperson being subject by an insurance company to an examination with a medical professional would not necessarily think that the professional has distinct roles to play for different insurers. See Restatement (Third) of Agency § 3.03 (2006) (stating that "[t]hird parties who

8

interact with the principal through the agent will naturally and reasonably assume that the agent has authority to do acts consistent with the agent's position or role unless they have notice of facts suggesting that this may not be so"). Fishman could reasonably argue that, by submitting himself to an examination by a physician who was collecting information for two insurers, the information was for the use of both insurers. At the very least, that would be a disputed question for a jury to resolve after considering all of the evidence. Therefore, the Court finds that there is a question of fact as to whether Fishman made a misrepresentation regarding his chiropractic treatment.

Turning to materiality, the test is whether "communication of [the truth] would have had the effect of substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium." Oade v. Jackson Nat. Life Ins. Co. of Mich., 632 N.W.2d 126, 131 (Mich. 2001) (punctuation modified).

Rugg testified that, had Fishman disclosed his chiropractic treatment, Berkshire would have issued the policy with no additional premium—but would have excluded coverage for back, neck, and spine injuries. Rugg Dep. at 64. The Court may rely on this affidavit. See Nationwide Prop. & Cas. Ins. Co. v. Brown, 260 F. Supp. 3d 864, 873 (E.D. Mich. 2017) ("Courts routinely rely on affidavits attesting to the insurer's reliance on and materiality of statements in insurance applications.").

Berkshire argues that this means that the misrepresentation was material under the Oade standard. Def. Reply at 6–7. Berkshire cites Oade's statement that the kind of rejection of the risk contemplated by Mich. Comp. L. § 500.2218 is a refusal "to make the contract not a contract." Oade, 632 N.W.2d at 131 (emphasis in original, punctuation modified). The court in Oade found that, where a misrepresentation would have led an insurer to charge an increased premium, the misrepresentation was material even though a contract would still have been made, as the contract

9

with an increased premium would not be the same contract. Id. According to Berkshire, the policy would not be the same contract if it included additional exclusions, so the misrepresentation qualifies as material under Oade. Def. Reply at 6–7.

Fishman disagrees, arguing that Berkshire cannot demonstrate materiality where it would have still issued the policy for no additional premium, had it known about the ongoing chiropractic treatment. Pl. Resp. to Def. Mot. for Summ. J. at 22–23.

The Court concludes that neither party is correct. The specific basis for upholding rescission in Oade was that, had certain medical conditions been disclosed to the insurer, the policy premium would have been higher. Oade, 632 N.W.2d at 131. That circumstance is not present here, as Rugg testified that knowledge of Fishman's chiropractic treatment would not have resulted in Berkshire charging a higher premium. Rugg Dep. at 63–64. Thus, Fishman is correct that the specific holding of Oade—pertaining to an increased premium—is not present here.

But there is insufficient factual development to rule on another way to establish materiality, which Oade discussed: whether a "reasonably careful and intelligent underwriters would have regarded the fact . . . as substantially increasing the chances of loss insured against so as to bring about a rejection of the risk. . . ." Keys v. Pace, 99 N.W.2d 547, 551 (Mich. 1959) (emphasis omitted); see also Oade, 632 N.W.2d at 131.

It is true that Rugg testified that the company would have issued the policy, albeit with exclusions for chiropractic matters. But there was no testimony about how she—much less the legal construct of a "reasonably careful and intelligent underwriter"—would have viewed the fact of chiropractic care as increasing the "chances of loss." Nor was there testimony about what specific "risk"—a term not defined by the parties or the caselaw presented—would or would not have been rejected. What the precise exclusions might have been, how significant they may have

10

been, and whether those would have effectively transformed the policy so that it was no longer "the" policy that was agreed to by the parties—could all bear on the question of materiality. The Court will not weigh in on legal issues that the parties have not adequately briefed. It will leave this, along with attendant factual premises, for the jury to decide.

Because questions of fact remain both as to whether Fishman made misrepresentations regarding his medical history and whether those misrepresentations were material, the Court will not grant summary judgment as to Berkshire's claim for recission based on Fishman's failure to disclose his ongoing chiropractic treatment in the application documents.

### 2. Employment

The other material misrepresentations alleged by Berkshire are related to Fishman's April 2021 arrest—and bond conditions—and the effects they may have had on his occupation. Berkshire makes two arguments here.

One argument is that Fishman made a material misrepresentation by failing to amend his "No" response to the Question 6E, which asked whether "[t]here is a pending investigation or complaint concerning you with a regulatory, governmental, or other entity that oversees your profession." Def. Mot. for Summ. J. at 23 (citing Policy at PageID.1555). In its supplemental brief, Berkshire adds that the declaration of insurability Fishman signed stated that he had "not had a professional license suspended or revoked, nor [had he] been notified of any pending investigation or complaint concerning [his] professional license." Def. Suppl. Br. at 11; Declaration of Insurability at PageID.1576. Berkshire argues that "[i]n light of Fishman's plea agreement and subsequent resignation of his license to practice law, which arose directly out of the charges made in the criminal complaints entered against him on April 6, 2021, Fishman's

11

insistence that those complaints did not concern his license cannot be accepted by this Court." Def. Suppl. Br. at 10.

The Court finds that Fishman's answers to these two questions do not constitute material misrepresentations. The entity overseeing Fishman's profession is the State Bar of Michigan. At the time Fishman completed the application and the declaration of insurability, there is no evidence that there was any pending investigation or complaint concerning him with the State Bar of Michigan. This was confirmed when Berkshire called the State Bar of Michigan after Fishman's arrest and was told that the Bar does not do anything regarding an attorney's license after an arrest is made. Pl. Resp. to Def. Mot. for Summ. J. at 22; Call with State Bar at PageID.2619 (Dkt. 81-12). The fact that Fishman's law license was ultimately terminated does not mean that he was under investigation by the State Bar while his criminal case was pending. In fact, during the call, the State Bar representative said she was "not aware" of the case. Call with State Bar at PageID.2619. Nor does the fact that Fishman's law license was ultimately terminated mean that, in April 2021, the criminal charges against him concerned that license.

Berkshire's other argument is that Fishman's bond condition—which provided that he could not work as a process server and could not file proofs of service with a court—altered his occupational duties or hours. Berkshire says that Fishman should have amended three answers when completing the declaration of insurability on April 9, 2021:

(i)    He should have amended his response of "40" to Question 3C in the Application, which asked "How many hours per week are you at work in this occupation?";

(ii)    He should have amended his response from "Yes" to "No" in Question 31 in the Application, which asked: "Are you presently employed and have you been continuously at work full time (at least 30 hours per week) performing the usual duties of your occupation for the past 180 days?"; and

(iii)    He should have amended his response from "No" to "Yes" to Question 3L in the Application, which asked: "Do you plan to change your occupation, occupational duties,

12

job, or employment within the next six months?"

Def. Mot. for Summ. J. at 15–17.

Berkshire offers no argument as to why Fishman should have amended Question 3C, which asked about his working hours. There is no indication that, on April 9, 2021, the criminal charges, which had been filed only three days prior, would have affected those hours. Fishman himself testified that the restrictions did not change his working hours. Fishman Dep. at 47–48, 124.

However, Berkshire does present arguments as to why the bond condition affected Fishman's occupation such that he should have amended his answers to the other two questions. First, Fishman's criminal counsel entered into a stipulation on April 14 amending the conditions of his pretrial release to lift the ban on his "filing any proof of service in any court" because "in order to provide representation to clients, it may be necessary for Fishman to file proofs of service." Stip. Amending Conditions of Pretrial Release at PageID.1605–1606 (Dkt. 66). Second, Berkshire points to the part of the policy's definition of "occupation" that states: "Your Occupation does not mean a specific job title, designation, industry, or job with a certain employer."[6] Def. Reply at 3. "Thus, even if circumstances at the Fishman Law Firm allowed Plaintiff [to] delegate the signing and filing of proofs of service to others, that factual distinction is immaterial." Id. Rugg testified that, because the policy was specifically underwritten for Fishman in his capacity as an attorney, the lack of any restrictions or investigations into his role as an attorney was a condition precedent to his coverage. Rugg Dep. at 37–38.

---

[6] The full definition reads: "Your Occupation means the occupation (or occupations, of more than one) in which You are Gainfully Employed during the 12 months prior to the time You become Disabled. Your Occupation does not mean a specific job title, designation, industry, or job with a certain employer." Policy at PageID.1617.

13

Fishman argues that the bond condition—which provided he could not work as a process server and could not file proofs of service with a court—did not alter his occupational duties or hours, as his duties did not include filing proofs of service. Pl. Resp. to Def. Mot. for Summ. J. at 20. In her testimony, Rugg acknowledged that Fishman was the managing attorney of a law firm, not a process server, and that his occupational duties were sales, operations, management, supervision, accounting, and bookkeeping. Rugg Dep. at 22–23.

However, Berkshire points to evidence that filing proofs of services might be viewed as part of his job duties. Fishman's stipulation in the Oakland County Plea Agreement stated that Fishman had "knowingly and intentionally permitted forged Proofs of Service under his name as attorney of record to be filed with the courts," Def. Suppl. Br. at 8 (citing Oakland County Plea Agreement). And, in amending the bond conditions, Fishman's counsel signed a stipulation stating that "it may be necessary for Fishman to file proofs of service." Stip. Amending Conditions of Pretrial Release at PageID.1606.

The policy does not clarify the definition of "usual duties of your occupation" or "occupational duties." Whether the charges and bond restriction affected those "duties"—and, therefore, whether Fishman's responses to the declaration of insurability were misrepresentations—is a question for the jury to decide.

Regarding materiality, Rugg testified that if she were to underwrite an attorney with the restrictions imposed on Fishman, she would "not want to underwrite them and give them coverage," as "attorneys have [filing proofs of service] as part of their job description and can do that." Rugg Dep. at 37. While this is not conclusive as to materiality, it is sufficient to establish a question of fact as to whether the policy would not have been issued had Fishman disclosed the restriction imposed on his practice of law by the bond conditions.

14

Because questions of fact remain with respect to whether Fishman made misrepresentations regarding his occupational duties and whether those misrepresentations were material, the Court will not grant summary judgment as to Berkshire's claim for recission based on Fishman's failure to amend his answers to Question 31 and Question 3L in the policy application.

### B.     Breach of Contract

Regarding Fishman's breach of contract claim, the central dispute is whether the policy covers Fishman's disability claim. Fishman argues that Berkshire was obligated to pay him under the policy because he had established that he had suffered total disability by submitting the opinion of a physician who had stated that Fishman was unable to work in his profession. Pl. Mot. for Summ. J. at 20–21 (citing Disability Policy (Dkt. 4-1)).

The Court finds that Fishman has put forth sufficient evidence to show that, at least at the time he submitted the claim and during Berkshire's investigation, he was totally disabled under the policy. At his deposition, Dr. Abramsky testified that he filled out an insurance form in August 2021 indicating that it was his opinion that Fishman was unable to work as a lawyer due to his anxiety and adjustment disorder. Abramsky Dep. at 20. He explained that he had formed that opinion as early as May 2021: "I mean, with that kind of diagnoses [sic], that kind of anxiety, any kind of work would be virtually impossible for him because work requires concentration, attention, capacity, memory capacity, all of which are severely compromised by anxiety." Id. This satisfies the policy's definition of "Totally Disabled":

> "Total Disability or Totally Disabled means that "solely due to Injury or Sickness, You are not able to perform the material and substantial duties of Your Occupation. You will be Totally Disabled even if You are Gainfully Employed in another occupation so long as, solely due to Injury or Sickness, You are not able to work in Your Occupation."

Disability Policy at PageID.108.

15

Berkshire's own doctor, Dr. Howard Oakes, reviewed and approved Dr. Abramsky's diagnosis: "Given the information available, the presence of psychiatric impairment from the time of the claimant's emotional trauma on 4/6/21 and going forward is reasonably supported." Oakes Report at PageID.2473 (Dkt. 81-10).

Berkshire responds to Fishman's evidence with two arguments: that (i) Fishman's disability is excluded under the terms of the policy, and (ii) Fishman cannot establish that he has suffered a total disability, as required for coverage under the policy terms. See Def. Mot. for Summ. J. at 31–33.

Berkshire's first argument is based on a policy provision excluding benefits for any disability:

- Caused by, contributed to by, or which results from, Your commission of, or any attempt to commit, a felony as defined under local, state, or federal law; or

- Caused by, contributed to by, or which results from, Your being engaged in an illegal occupation; or

- Caused by, contributed to by, or which results from, any suspension, revocation, restriction, inactivation, surrender, or the like, of Your professional or occupational license or certification.

Policy at PageID.1532.

Fishman argues that Berkshire did not properly reserve rights to deny coverage under the policy in the event that its recission claim fails. Pl. Resp. to Def. Mot. for Summ. J. at 23–24. He argues that Berkshire's general reservation at the end of its notice of recission (that Berkshire "reserves all of its rights and defenses") was insufficiently specific. Id.

Fishman further argues that the policy defenses were waived during this litigation. Id. He argues that Berkshire waived its right to bring its defense based on the policy exclusions above because it did not include them in its affirmative defenses. Id. The Court agrees. According to

16

Federal Rule of Civil Procedure 8(c)(1), "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." "As a result, failure to timely plead an affirmative defense may result in waiver and the exclusion of the defense from the case." Lorenz v. Lorenz, No. 20-cv-13128, 2021 WL 3612294, at *2 (E.D. Mich. July 29, 2021) (punctuation modified); see also Baker v. Marshall, 919 N.W.2d 407 (Mich. Ct. App. 2018) (finding an insurer to have waived an argument that coverage under a policy was precluded by an exclusion where the insurer did not include the exclusion in its affirmative defenses).

Under Michigan law, "'[r]eliance on an exclusionary clause in an insurance policy is an affirmative defense.'" Gemmell v. Encompass Indem. Co., No. 18-cv-11257, 2019 WL 3892403, at *3 (E.D. Mich. Aug. 19, 2019) (quoting Shelton v. Auto-Owners Ins. Co., 899 N.W.2d 744, 749 (Mich. Ct. App. 2017)). While the Sixth Circuit has clarified that a district court "may, in its discretion, allow a defendant to raise an affirmative defense for the first time in a motion for summary judgment," the district court may only do so where it would "not result in surprise or prejudice to the plaintiff." See Rogers v. I.R.S., 822 F.3d 854, 864 (6th Cir. 2016) (punctuation modified). "Whether or not a court will find prejudice depends in large part on the amount of time a party had to bring the affirmative defense and its reason for not doing so earlier." Id.

Here, Berkshire raised this defense in its motion for summary judgment, which was filed in December of 2023—almost nineteen months after Fishman filed his amended complaint. Berkshire has given no explanation as to why it took so long to raise the defense. Berkshire's claims manager Dennis Kelly was asked during his deposition: "Is there a particular exclusion that Berkshire believes would bar payment of benefits under the policy?" and responded: "There is no—there are no benefits payable because there is not a policy in effect." Kelly Dep. at 120 (Dkt. 81-11). When Kelly was asked to identify any terms, conditions, limitations, and exclusions that

17

Berkshire refers to in its third affirmative defense,[7] he responded: "Again, there was no—the policy was rescinded; therefore, there was no benefit due or payable. In addition, we did not have—at the time of claims decision making, it was parallel to the same time that we were looking at recission of the policy; and therefore, we rescinded the policy." Id. at 123.

The fact that Berkshire not only did not raise its policy exclusion defense in its affirmative defenses but continued to fail to raise it during discovery prejudiced Fishman, who lost many months of preparation time to argue against Berkshire's defenses as well as the opportunity to take related discovery. Therefore, the Court finds that Berkshire has waived the policy exclusion defense.

Regarding Berkshire's second argument—that Fishman is not totally disabled according to the policy—the Court finds that Berkshire has failed to provide sufficient countervailing evidence in the face of Fishman's evidence demonstrating total disability. Berkshire argues that Fishman cannot establish that he was totally disabled under the policy terms because his inability to work was not "solely due to injury or sickness" but was rather "primarily due to the legal consequences" of his behavior. Def. Resp. to Pl. Mot. for Summ. J. at 11–13. But the evidence Berkshire cites in support of this argument does not show this. Berkshire cites Dr. Abramsky as testifying that (i) he did not tell Fishman "that his inability to work is a conclusion that I have clinically [and that] whether formally he could do that or not is a different issue," and (ii) it was his understanding in May 2021 that Fishman had lost or surrendered his license. Id. at 11–12 (citing Abramsky Dep. at 17–20). Berkshire also notes that Dr. Oakes recognized that "Dr. Abramsky did note that there are [sic] also appeared to be legal hurdles preventing the claimant from practicing as well." Id. at

---

[7] Berkshire's third affirmative defense reads: "Plaintiff is precluded from recovering any relief sought under the terms, conditions, limitations, and exclusions of Policy No. Z4600540." Def. Answer & Affirmative Defenses at 7.

12. But none of that evidence negates Dr. Abramsky's express finding that Fishman was unable to work as a lawyer due to his anxiety and adjustment disorder, or Dr. Oakes's confirmation that Dr. Abramsky's finding was "reasonably supported." See Oakes Report at PageID.2473.

Berkshire cites Solomon v. Royal Maccabees Life Ins. Co., 622 N.W.2d 101 (Mich. Ct. App. 2000) for its argument that Fishman suffers from a legal disability, as opposed to a factual one, and that coverage is, therefore, not appropriate. Def. Mot. for Summ. J. at 31–33. In Solomon, the Michigan Supreme Court held in favor of an insurer where the insured claimed total disability based on an inability to work due to bipolar affective disorder. The Court found that Solomon's inability to work resulted not from his bipolar affective disorder, but rather from legal proceedings filed against him based on his engagement in inappropriate sexual relations with a patient. 622 N.W.2d 101. Berkshire argues that Fishman's situation is analogous, as any psychiatric condition he may have had did not instigate his seeking any treatment until legal proceedings commenced in connection with his wrongdoing. Def. Suppl. Br. at 13.

To the extent that Berkshire argues that Fishman suffered from a legal, not factual disability when Fishman filed his disability claim and Berkshire conducted its investigation, the Court disagrees. The Solomon court found that Solomon was not unable to perform his occupation until he voluntarily surrendered his license. This conclusion was reached in light of Solomon's doctor's testimony that, had Solomon not surrendered his license, he would have been able to continue treating a significant portion of the population without risk. Solomon, 622 N.W.2d at 106. Further, Solomon filed his claim for disability benefits after he surrendered his license for the stated purpose of quelling any media exposure. Id. Those facts distinguish Solomon from the case at hand, in which (i) Fishman's doctor has stated unequivocally that Fishman's anxiety and

19

adjustment disorder prevented him from working, and (ii) Fishman did not surrender his license until years after he filed his claim for disability insurance.

Although the Court finds that no issue of fact remains regarding Fishman's total disability at the time he filed his claim, the Court cannot enter summary judgment in his favor at this time on his breach of contract claim. Because the Court has found that whether the contract was properly rescinded is a question to be resolved at trial, there remains a question of fact about whether there was a contract to be breached, precluding a grant summary judgment on Fishman's breach of contract claim at this time.[8]

### III. CONCLUSION

For the reasons explained above, the Court denies both motions for summary judgment (Dkt. 65, 75). The Court also grants Berkshire's motion for judicial notice (Dkt. 90) and denies Fishman's motion for leave to file a supplemental brief (Dkt. 92).

SO ORDERED.

Dated: September 26, 2024　　　　　　　　　　　　s/Mark A. Goldsmith
Detroit, Michigan　　　　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[8] Further, while the Court finds that Fishman has established total disability at least at the time he filed his claim and throughout the investigation, neither party has addressed any possible interaction between, on the one hand, the medical disability Dr. Abramsky testified prevented Fishman from working and, and on the other, the legal disability that arose later once Fishman agreed to surrender his law license, see Def. Suppl. Br. at 8–9; Oakland County Plea Agreement at PageID.2712. This may impact the extent of the relief to which Fishman is entitled—an issue that will be addressed at a later phase of this case.